## The People of the State of New York, Appellant, v Charles Lee and Allen Niescher, Respondents.

First Department, November 24, 1981

**APPEARANCES OF COUNSEL**

*David H. Steiner* of counsel *(Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*David Lenefsky* of counsel *(Lenefsky & Lenefsky, P.C.,* attorneys), for respondents.

**OPINION OF THE COURT**

Carro, J.

An undercover police officer purchased cocaine from defendant Lee, inside of the apartment belonging to Lee and his codefendant, on May 20, 1980. One week later, on May 27, an informant advised a narcotics division officer that he was within the apartment when a quantity of cocaine was delivered to defendant Lee. At 3:45 P.M. of that day the undercover officer returned to the apartment and purchased cocaine from Lee. Following this purchase, one

of the officers left to obtain a search warrant for the apartment. Several other police officers, within approximately one hour of the purchase, entered the apartment and placed both defendants under arrest. The officers used defendants' telephone to call their brother officer and advised him that they had entered the apartment and were awaiting the search warrant before conducting the search. The officer arrived "a short time after" with the warrant, the apartment was searched, and contraband discovered. During their presence in the apartment, the officers had several conversations with the defendants and statements were made. The record, however, is not clear as to the chronology of these alleged statements and the alleged pre-interrogation warnings.

The court below held, on the papers submitted, that this case fell within the rule of *Payton v New York* (445 US 573). It suppressed the contraband and the statements involved, and dismissed the indictment. The record reveals, in accordance with our above findings of fact, and the defendant concedes, that the contraband was discovered subsequent to the execution of a search warrant and that no search was conducted prior thereto. The People, in their brief, allege that six conversations took place between the officers and the defendants, four of which occurred after the search warrant was obtained. The record, however, contains insufficient facts upon which to base findings and draw conclusions of law with reference to these conversations and statements.

*Payton v New York (supra)* held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest, absent exigent circumstances. The defendant contends that "[t]he sole issue on this appeal is whether exigent circumstances existed to validate the entrance of the defendants' apartment by police officers without a search warrant" and that, lacking such exigent circumstances, the contraband and the statements must be suppressed by reason of the illegal entry itself. The People contend that exigent circumstances justified the entry into the apartment without a warrant to secure the drugs and that, in any event, the search was

conducted pursuant to a valid search warrant obtained on the basis of information known to police before they entered the apartment, so that the discovery of the evidence had "'an independent origin entirely free and distinct from subsequent proscribed police activity'".

In support of their argument that exigent circumstances existed for the entry in this case, the People cite *People v Clements* (37 NY2d 675, cert den *sub nom. Metzger v New York,* 425 US 911), upon the basis of which they appear to argue that the mere presence of narcotics in an apartment constitutes exigent circumstances justifying an immediate warrantless search. We are unable to so hold. In *Clements,* the court found exigent or exceptional circumstances, first because, in dealing with narcotics, the officers were obviously dealing with potentially readily disposable contraband; in the second place, the informer used by the police in that case revealed to them his anxiety and belief, following the sellers questioning of him, that they might have become suspicious, and he became apprehensive for his own safety; and (p 680) "[t]hirdly, but of less significance, the conduct of the officers reflected their own contemporaneous evaluation of the situation — that prompt police action was imperative". (This last, of course, must have objective support in the record.) The *Clements* court (at p 684), also cited with approval *United States v Rubin* (474 F2d 262, 268, cert den *sub nom. Agran v United States,* 414 US 833), which concluded that where "Government agents * * * have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified." The *Rubin* court listed some of the circumstances relevant to whether emergency circumstances exist (pp 268-269):

"(1) the degree of urgency involved and the amount of time necessary to obtain a warrant * * *

"(2) reasonable belief that the contraband is about to be removed * * *

"(3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought * * *

"(4) information indicating the possessors of the contraband are aware that the police are on their trail * * * and

"(5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic'".

■ We conclude that the mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant. We further conclude that the record before us does not exhibit such additional factor or factors necessary to a determination that the required exigent circumstances existed here.

■ In opposition to the defendant's contention that we need only determine the issue of exigency, the People have argued, correctly we believe, an "independent source" or "independent origin" doctrine, that is, that the search was conducted pursuant to a valid search warrant, obtained wholly on information already known to the police before they entered the apartment. The contraband was discovered only subsequent to the execution of that warrant.

"[I]f the evidence was revealed as a direct consequence of the unlawful police action, the evidence is tainted and must be suppressed" *(People v Boodle,* 47 NY2d 398, 402). Here, the discovery of the drugs was in no way dependent upon the initial entry into the apartment, but instead relied upon an independently obtained search warrant. The evidence did not flow from the wrong. "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint'" *(Wong Sun v United States,* 371 US 471, 487-488).

The order of the Supreme Court, New York County (HAFT, J.), entered August 5, 1980, which suppressed physical evidence and statements and dismissed the indictment, should be modified, on the law and the facts to deny the motion as to the seized articles, to reinstate the indictment and to remand for further proceedings for findings of fact as to all statements.

KUPFERMAN, J. P., SANDLER, and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on August 5, 1980, unanimously modified, on the law and the facts, to deny the motion as to the seized articles, to reinstate the indictment and to remand for further proceedings for findings of fact as to all statements.