Possession of marijuana; fifteen years and a fine of $25,000.
The State's evidence showed that on April 23, 1980, Dothan police officers, along with agents of the Alabama and Georgia Bureaus of Investigation, went to the farm of one Jack Hall in Houston County, Alabama, to execute a search warrant. The warrant had been issued by William G. Hause, deputy recorder of the Dothan Municipal Court, on affidavit of James G. Ward of the Alabama Bureau of Investigation.
Jack Hall's premises consisted of a house and two barns, one of which was used as a mechanic's shop. Two vehicles belonging to the appellant, a locked two and one-half ton International Harvester truck and a three-fourth-ton-Ford pickup truck with a locked *Page 159 
camper top, were parked behind the shop. The appellant's son and his daughter's boyfriend were seated in the pickup truck when the officers arrived on the scene. Execution of the search warrant revealed 88 wrapped bales of vegetation weighing 1,620 pounds concealed in the appellant's two trucks.
After the search had been initiated, appellant appeared on the scene. Agent James G. Ward testified that he observed the appellant drive up in a blue Jeep Wagoneer and get out of the vehicle. Ward stated that "when I turned to a point I saw Mr. Etheridge see my badge, and . . . he turned in his tracks and started back toward his jeep." Ward testified that he searched the jeep and found a paper sack with one ounce of marijuana in the glove compartment.
Appellant was arrested on the scene for possession of marijuana and his two trucks were moved to the Dothan Civic Center, inventoried, and guarded by Dothan police officers. The following day, the trucks and their contents were driven to the Enterprise Laboratory of the Alabama Department of Forensic Science and turned over to Mr. Charles F. Brooks. Brooks submitted the evidence to Mr. Joe Saloom, State Crime Laboratory Analyst, who tested eighty-five bales weighing a total of 1,596 pounds and found them to contain marijuana with a street value of 1.25 million dollars.
Agent Freddy Strength of the Alabama Bureau of Investigation testified that, prior to the date of the search, he had seen the appellant in the same three-fourth-ton Ford pickup truck on several occasions at the "old Municipal Airport" in Selma, a facility which Strength described as "closed down."
Jack Hall testified that he had known the appellant since 1963 and had done work on numerous motor vehicles for him. Hall repaired the two trucks in question for appellant, but stated that he did not lock them. Hall said that on April 22, the day before the search, he went fishing and, when he returned, appellant was in his (Hall's) yard working on a car. Appellant returned the next morning to finish working on the vehicle with tools he borrowed from Hall. Hall said that the International Harvester two and one-half ton truck had been parked on the premises since appellant left it there in 1979. The pickup truck had been on the premises for one day prior to the search. Hall stated that he did not know what was inside either vehicle.
At the conclusion of the State's case, appellant moved to exclude the evidence on the ground that the State failed to present a prima facie case. He also renewed his objection, made earlier during the hearing on a motion to suppress the evidence, to the search and seizure of the marijuana. The motion was overruled and the defense presented its case.
The appellant called numerous friends and family members who testified to his good general reputation and his reputation for truthfulness. He testified in his own behalf that he was a pilot and had worked for many years in the aircraft industry, beginning as a mechanic. He stated that he had also been employed by Aero Corporation in Lake City, Florida, and his work in marketing required him to travel to foreign countries. He said that on April 23, he had two trucks at Hall's repair shop, but stated that he did not put the bales of marijuana in the vehicles and he did not know how they got there.
 I
Appellant contends that the search warrant was totally defective because it was issued by an official without legal authority.
The authority to issue search warrants is vested in "judges," [including "municipal judges," Ala. Code § 12-14-32 (1975)] and "magistrates," Ala. Code § 15-5-1 (1975). The warrant in the present case was issued by William G. Hause, acting as "Deputy Recorder" of the Dothan Municipal Court. Mr. Hause testified that he was appointed deputy recorder on October 2, 1973, by Resolution No. 4581 of the Board of Commissioners of the City of Dothan, and that he had not been "reappointed" since that time. *Page 160 
A "recorder" is defined in T. 37, § 582 of the Code of Alabama (1940) as "any person authorized herein to hold municipal court."
However, Amendment 328 of the Constitution of Alabama of 1901 (the Judicial Article) created a new unified court system designating city (recorder's) courts as "municipal courts," and giving the governing body of each municipality the option of abolishing its municipal court and transferring jurisdiction to a newly-created "district court," or, in the alternative, re-establishing its municipal court under the new system. Ala. Const. Amend. 328, § 6.065.
Section 6.21 (a) of the Amendment provided the following:
 "All courts not herein authorized which are in existence at the time this article becomes effective shall retain their powers for four years, unless sooner terminated by act of the legislature."
The Judicial Article was ratified on December 27, 1973. Ala. Const. Amend. 328. Therefore, by virtue of § 6.21 (a), supra, the court of which Mr. Hause was deputy recorder could have remained in existence no later than December 27, 1977.
The record does not indicate whether the governing body of the City of Dothan elected to abolish its recorder's court and transfer jurisdiction to a district court, whether it chose to re-establish its city court as a "municipal court" under the unified system, or whether Mr. Hause was ever recommissioned, and later elected, as a district or municipal judge. We have only his testimony that he was originally appointed deputy recorder on October 2, 1973, and has not been "reappointed" since then.
Rather than remand this cause for a determination of the jurisdictional questions regarding Mr. Hause's position, we assume, without deciding, that his authority as deputy recorder did not extend past December 27, 1977, and that the search warrant he issued in that capacity in 1980 was invalid.
We hold, however, that the search in the present case was justified as a warrantless search by virtue of the probable cause plus exigent circumstances exception to the warrant requirement. See Chambers v. Maroney, 399 U.S. 42,90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Simpson v. State, 51 Ala. App. 279,284 So.2d 734 (1973).
Probable cause may be based solely on information obtained from an informant, provided the tip meets the two-pronged test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509,12 L.Ed.2d 723 (1964): the veracity prong and the basis of knowledge prong.
In the case before us, Agent James G. Ward testified that he received a tip from an informant which led him to believe that contraband was present in appellant's vehicles on the Hall property. Ward's testimony during the motion to suppress indicated that his tip from the informant was the same as that to which he had sworn in the affidavit for the search warrant, which, omitting the formal parts, reads as follows:
 "[O]n the premises known as Route One, Box 23, McAllister Road, Dothan, Houston County, Alabama, said residence consisting of a house trailer, a metal barn or building, two old frame houses and several old cars and a large white truck, or its Police Jurisdiction, there is now being concealed certain property, namely Marijuana, which is illegally kept, used and/or sold and that the fact tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: `I am James G. Ward of the State of Alabama, assigned to the Alabama Bureau of Investigations, presently working with drug violations. Yesterday I talked with a reliable informant. This informant has given me reliable information in the recent past, which after being checked has proven reliable. This informant told me that conversations in negotations with Charles F. Etheridge for the purpose of buying Marijuana indicate that the drugs are there and are at the above described residence and curtilage, and in the possession of a subject known to the informant as Jack Hall, whose name to the affiant is otherwise unknown.'"
Ward's affidavit satisfies the veracity prong of the Aguilar
test because it recites *Page 161 
more than a mere conclusion that the informant was reliable. It states, "This informant has given me reliable information in the recent past, which after being checked has proven reliable." This recitation establishes the underlying facts upon which the officer's conclusion was based, and it more than meets the minimum information required by Neugent v. State, Ala., 340 So.2d 52 (1976), cert. denied, 430 U.S. 969,97 S.Ct. 1653, 52 L.Ed.2d 361 (1977), wherein the affidavit indicated that the information came from "a person whose record of reliability for correctness has been good." See also Waters v.State, Ala.Cr.App., 360 So.2d 347, cert. denied, Ala.360 So.2d 358 (1978); Hatton v. State, Ala.Cr.App., 359 So.2d 822, cert. denied, Ala., 359 So.2d 832 (1977).
The affidavit also satisfies the second prong of the Aguilar
test; it sets out the circumstances under which the informant learned that marijuana was present in the vehicles on the Hall premises. The tipster's information came from the appellant himself; the informant had "conversations in negotiations with Charles F. Etheridge for the purpose of buying Marijuana." The fact that the informant admitted to having negotiations for a marijuana buy also strengthens his credibility because the information imparted was against his penal interest. SeeYielding v. State, Ala.Cr.App., 371 So.2d 951, cert. denied, Ala., 371 So.2d 962 (1979).
In addition to the information stated in the affidavit, Agent Ward testified at the suppression hearing that the informant told him that appellant stated that the marijuana was in his (appellant's) truck. Ward also said that he had personally corroborated some of the details of the informant's tip. He testified that he put the Hall premises under surveillance the day before the search and he observed appellant's truck on the Hall property the morning of the search.
In our judgment, the facts and circumstances within the knowledge of Agent Ward and the other officers who conducted the search were sufficient to warrant a man of reasonable caution in the belief that an offense had been or was being committed. See Brinegar v. United States, 338 U.S. 160,69 S.Ct. 1302, 93 L.Ed. 1879 (1949), that is, that there was probable cause for the search.
Even though probable cause exists, there must also be exigent circumstances to excuse a warrantless search. Simpson v. State, supra; Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Exigent circumstances exist whenever an object to be searched is mobile or movable, such as an automobile. Reid v. State, Ala., 388 So.2d 208 (1980); Spencer v. Town of Gordo, Ala.Cr.App., 389 So.2d 182 (1980). Here, the fact that the marijuana was found in appellant's two trucks, both of which were capable of being moved, provides the urgency necessary to excuse a search without a warrant.
 II
Approximately two months prior to trial appellant filed a motion to produce, requesting, among other things, the opportunity to submit "a similar quantity of the material tested by the State Toxicologist's Office" to an independent laboratory for testing and analysis. The motion was granted.
One week later, appellant moved to dismiss the indictment, arguing that the State failed to comply with the order to produce and had destroyed the evidence. On the date set for trial, appellant filed a plea in abatement alleging that he had been denied access to the physical evidence which would be introduced by the State. The court denied the motion and overruled the plea, finding that, although some of the bales of plant material had been destroyed, eighteen full bales were intact and samples of all the bales had previously been made available to the appellant for testing.
We find no error in the trial court's ruling in this regard. Appellant had a right to a sample of the allegedly prohibited substance, Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973);Powers v. State, 49 Ala. App. 690, 275 So.2d 369 (1973), and he was provided with everything to which he was entitled under the law. *Page 162 
 III
Appellant offered evidence of his good reputation for truth and veracity through the testimony of his cousin, Sharon Etheridge Strickland. On cross-examination of Ms. Strickland, the following occurred.
 "Q. All right. You say you know of his reputation. Have you ever heard that he was jailed in South America?
"A. No.
 "Q. Never heard that? Ever heard that he was involved in a smuggling ring, smuggling in marijuana? Have you ever heard that?
"A. Yeah.
 "Q. Have you heard, you have heard that? Have you heard recently that he was arrested for conspiracy to smuggle in ten tons of marijuana in Panama City, Florida and the Tallahassee area?
 "MR. TRAWICK: We object to that, may it please the Court. Counsel knows what he is referring to is an indictment since this one and arising out of the same evidence. And, I have it in my briefcase, documented evidence to prove to this Court. And we move for a mistrial and assign as grounds the remarks that Counsel has just made.
 "MR. SORRELLS: Judge, we can reply to that. I don't know if it arises out of the same situation, I don't think it does. But, be that as it may, if he will look at the law it is true that you must limit these questions to before the arrest except in one exception. When he places a witness on the stand to testify as to truth and veracity, because the Court has said that when he does that, he is testifying about his present reputation for truth and veracity, because he has testified about that. When that is done, the State is allowed to ask questions up to the time of trial when is asked about truth and veracity not general reputation. We will be glad to show you that in McElroy and it is in all the cases that when you open the door by asking about truth and veracity, then you open it up to the day of the trial, right up to the very day of the trial.
"THE COURT: Okay. Let me see the citation.
"MR. SORRELLS: All right. I will be glad to.
 "(Thereupon, Mr. Sorrells left the presence and hearing of the Court Room in order to secure the citation in question. After a short period of time, he returned to the presence and hearing of the Court Room, and the following proceedings were had, to-wit:)
 "MR. SORRELLS: Judge, I cite to you McElroy's 26.02, Subsection 14: If a witness testifies to another's good general reputation, only with respect to truth and veracity, for the purpose of supporting such other's credibility as a witness, the supporting witness may be asked on Cross Examination whether he, at any time, heard rumors derogatory to such other's truth and veracity. We submit that is the law in the case. It certainly applies on his credibility.
 "THE COURT: (Studies the citation in question.) Where were you reading from?
 "MR. SORRELLS: I am sorry, Judge. Right here, this paragraph right there. That section.
 "THE COURT: (Studies the citation in question.) Okay. I overrule you. Go ahead.
"MR. TRAWICK: We except."
Although it is proper to question a witness, who has testified to another's good reputation for truthfulness, about whether he has heard rumors derogatory to the other, the rumors must relate to the specific trait of truthfulness. C. Gamble,McElroy's Alabama Evidence, § 26.02 (14) (3d ed. 1977).
In our judgment, whether appellant was arrested for conspiracy to smuggle marijuana was not directly related to his truth and veracity. However, to be timely, an objection must be made as soon as the ground for the objection becomes apparent.Smith v. State, Ala.Cr.App., 344 So.2d 1239, cert. denied, Ala., 344 So.2d 1243 (1977).
Here, appellant did not object to the two previous questions regarding whether the *Page 163 
witness had heard appellant "was jailed in South America" or "was involved in a smuggling ring, smuggling in marijuana," both of which were non-germane to the trait of truthfulness. In our opinion, appellant's objection and motion for mistrial were untimely and were, therefore, properly overruled.
 IV
The evidence introduced by the State was sufficient to present a prima facie case of possession of marijuana. Although appellant disclaimed any knowledge of the marijuana, the State established that over 1500 pounds of the prohibited substance were found in his two vehicles.
Knowledge of the presence of a controlled substance may be proved by circumstantial evidence, see Reed v. State, Ala.Cr.App., 368 So.2d 326 (1979); Henderson v. State, Ala.Cr.App., 347 So.2d 540, cert. quashed, Ala., 347 So.2d 543
(1977). Here, appellant's ownership of the two trucks containing the contraband, coupled with the fact that marijuana was also found in the glove compartment of his jeep and the fact that he "turned in his tracks" at the recognition of law enforcement officers on the Hall premises furnish circumstantial evidence from which his guilty knowledge may be inferred. See Smith v. State, Ala.Cr.App., 351 So.2d 668, cert. denied, Ala., 351 So.2d 675 (1977); Roberts v. State, Ala.Cr.App., 349 So.2d 89, cert. denied, Ala., 349 So.2d 94
(1977). Under these circumstances, the trial court properly submitted the case to the jury to resolve the disputed questions of fact.
We have searched the record and have found no error prejudicial to appellant; therefore, the judgment of conviction by the Houston Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.