I. Statement of the Case
On May 18, 2001, Anwar Yasin Cameron was indicted for trafficking in marijuana, a violation of § 13A-12-231(1), Ala. Code 1975. On October 2, 2001, Cameron filed a motion to suppress the marijuana. On November 11, 2001, the trial court conducted a hearing. On February 28, 2002, the trial court denied Cameron's motion to suppress.
On May 31, 2002, pursuant to a negotiated plea agreement, Cameron pleaded guilty to trafficking in marijuana, but expressly reserved his right to appeal the trial court's denial of his motion to suppress the marijuana. The trial court noted Cameron's reservation of the right to appeal the denial of the motion to suppress and sentenced him to 10 years in prison. The trial court also fined him $25,000 pursuant to §13A-12-231(1)(a), Ala. Code 1975, fined him $1,000 pursuant to the Demand Reduction Assessment Act, see § 13A-12-281(a), Ala. Code 1975, and fined him $100 for the Alabama Forensic Sciences Trust Fund, see §36-18-7(a), Ala. Code 1975. This appeal followed. *Page 1148 
 II. Statement of the Facts
On March 20, 2001, Officer Lee Watkins was on routine patrol when he noticed a vehicle parked on the lawn of a housing project. Officer Watkins testified that the vehicle was "backed up to the front porch . . . just about to the building." (R. 9.) Officer Watkins testified that he stopped at the apartment where the vehicle was parked because law enforcement officers had been advised by the Tuscaloosa Housing Authority to ask the owner of a vehicle parked on the lawn to move the vehicle. Officer Watkins got out of his patrol car and approached the door of the unit closest to the vehicle to determine whether the tenant of the unit owned the illegally parked vehicle, and, if so, to ask the tenant to move the vehicle.
When Officer Watkins knocked on the door, Cameron answered. Officer Watkins testified that he "could smell a strong smell of marijuana," that it was "overwhelming," and that he could see "real[ly] heavy smoke . . . in the apartment." (R. 11.) Officer Watkins testified that he had smelled marijuana before the date in question and that he was capable of recognizing the smell of marijuana. Officer Watkins asked to speak to the tenant. Officer Watkins testified that Cameron then turned and ran to the kitchen. Officer Watkins testified that, at that point, he entered the apartment without a search warrant. Officer Watkins saw Cameron "taking objects from the table that was in the kitchen and put[ting them] in a drawer in the kitchen." (R. 13.) Officer Watkins testified that, in his experience, when someone has marijuana in his possession and he sees the police, that person will "try to flush it, hide it, [or] get rid of it." (R. 30.)
Officer Watkins asked Cameron to sit down at the kitchen table, where another black male was already seated. Officer Watkins testified that, at that point, he could hear someone else walking down the hallway behind him. Officer Watkins testified that he called for backup because the rest of the apartment was dark, and he could not ascertain how many other people were in the apartment or where those other people were.
The tenant emerged from the hallway and began moving items around on the kitchen table. When Officer Watkins saw her put something from the table into an empty fast-food box, Officer Watkins asked her to sit down at the table with the other two men. While waiting for backup to arrive, Officer Watkins asked the three people for their identification and wrote down the information. Backup arrived shortly thereafter, and Officer Watkins looked through the apartment to determine whether there were other people in the back of the apartment.
While Officer Watkins was looking through the apartment for other people, Officer Richard Mason talked with the tenant, who consented to the search of her apartment. The officers found a digital scale and approximately 2.4 pounds of marijuana, the majority of which was found in brick form in the tenant's bedroom.
Cameron testified that he did not run when Officer Watkins asked for the tenant. He testified that he turned and merely walked to the kitchen and that running would have been impossible because only four or five feet of space separated the front door and the kitchen. Cameron testified that, when he entered the kitchen, he discovered that Officer Watkins had entered the apartment and followed him into the kitchen. Cameron also testified that, when he and Officer Watkins entered the kitchen, the tenant was already present at the kitchen table and that she did not emerge from the hallway behind Officer Watkins, as Officer Watkins had testified. *Page 1149 
Cameron testified that Officer Watkins's initial search was not the search for other people in the apartment; he maintained that, while waiting for backup to arrive, Officer Watkins searched through the garbage can and searched the drawer in the kitchen.
 III. Analysis
"[A] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this Court . . . and is not to be reversed absent a clear abuse of discretion." Jackson v. State,589 So.2d 781, 784 (Ala.Crim.App. 1991).
 "It is well settled that warrantless entries to and searches of a residence are presumptively unreasonable and that the burden is on the government to demonstrate exigent circumstances justifying a warrantless entry and search. Welsh v. Wisconsin, 466 U.S. 740 (1984); Payton v. New York, 445 U.S. 573
(1980); Landreth v. State, 600 So.2d 440 (Ala.Cr.App. 1992). To justify a warrantless entry and search, the state needs to show both the existence of probable cause and exigent circumstances. United States v. Rodgers, 924 F.2d 219 (11th Cir. 1991), cert. denied, 501 U.S. 1221, 111 S.Ct. 2834, 115 L.Ed.2d 1003
(1991), appeal after remand, 981 F.2d 497 (11th Cir. 1993); Etheridge v. State, 414 So.2d 157 (Ala.Cr.App. 1982)."
A.A.G. v. State, 668 So.2d 122, 126 (Ala.Crim.App. 1995) (some internal citations altered). "The establishment of probable cause requires only that facts available to the officer at the moment of [entry] would warrant a person of reasonable caution to believe that the action taken by the officer was appropriate." A.A.G., 668 So.2d at 127.
 A. Probable Cause
The first part of the inquiry requires us to determine whether the odor of marijuana emanating from the residence was sufficient to provide probable cause to believe that there is was contraband in the residence. Although we have so held in the case of an automobile, see Smith v.State, 606 So.2d 174 (Ala.Crim.App. 1992); Key v. State, 566 So.2d 251
(Ala.Crim.App. 1990); and Sterling v. State, 421 So.2d 1375
(Ala.Crim.App. 1982), we have yet to reach the question as it concerns a citizen's residence.
In Johnson v. United States, 333 U.S. 10 (1948), police officers had received information from a confidential informant that someone was smoking opium in the Europe Hotel. Upon arrival, the narcotics officers, all of whom
 "were experienced in narcotic work[,] recognized at once a strong odor of burning opium which to them was distinctive and unmistakable. The odor led to Room 1. The officers did not know who was occupying that room. They knocked and a voice inside asked who was there. `Lieutenant Belland,' was the reply. There was a slight delay, some `shuffling or noise' in the room and then the defendant opened the door. The officer said, `I want to talk to you a little bit.' She then, as he describes it, `stepped back acquiescently and admitted us.' He said, `I want to talk to you about this opium smell in the room here.' She denied that there was such a smell. Then he said, `I want you to consider yourself under arrest because we are going to search the room.' The search turned up incriminating opium and smoking apparatus, the latter being warm, apparently from recent use. This evidence the District Court refused to suppress before trial and admitted over *Page 1150 
defendant's objection at the trial. Conviction resulted and the Circuit Court of Appeals affirmed."
333 U.S. at 12 (footnote omitted). Although the Court eventually found the warrantless entry and search to be unconstitutional because there were no "exceptional circumstances" to excuse the officers' dispensation with a warrant,[1] it also commented on whether the smell of the opium could constitute probable cause for issuing a warrant:
 "At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. We cannot sustain defendant's contention, erroneously made, on the strength of Taylor v. United States, 286 U.S. 1 [(1932)], that odors cannot be evidence sufficient to constitute probable grounds for any search. That decision held only that odors alone do not authorize a search without [a] warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character."
333 U.S. at 13. See Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971) ("Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause."). See also United States v. McSween,53 F.3d 684 (5th Cir. 1995); United States v. Nicholson, 17 F.3d 1294
(10th Cir. 1994); United States v. Reed, 882 F.2d 147 (5th Cir. 1989);United States v. Haley, 669 F.2d 201 (4th Cir. 1982); United States v.Garcia-Rodriguez, 558 F.2d 956 (9th Cir. 1977); United States v. Curran,498 F.2d 30 (9th Cir. 1974); State v. Longo, 708 A.2d 1354 (Conn. 1998);State v. Dorson, 615 P.2d 740 (Haw. 1980).
Officer Watkins testified that, when Cameron opened the door to the residence, a strong and overwhelming odor of marijuana emanated from the apartment. He also testified that he saw a large amount of smoke in the house. He testified that he recognized the smell as marijuana based on his experience and training as a police officer and based on the fact that he had previously encountered the smell. This testimony was uncontroverted. Additionally, Officer Watkins also testified that, upon seeing a police officer at the front door, Cameron ran from the room and from Officer Watkins.
We hold that the strong and overwhelming smell of marijuana emanating from the house, combined with Officer Watkins's testimony regarding his ability to identify the distinctive odor of marijuana, established the existence of Officer Watkins's probable cause to believe that contraband was present inside the residence.
 B. Exigent Circumstances
The burden rests on the State to prove the existence of an exigent circumstance to overcome the presumption of unreasonableness that attaches to warrantless residential entries and searches. McCammon v.State, 499 So.2d 811 (Ala.Crim.App. 1986) (citing Welsh v. Wisconsin,466 U.S. 740 *Page 1151 
(1984)). See also Vale v. Louisiana, 399 U.S. 30, 34 (1970) ("The burden rests on the State to show the existence of such an exceptional situation.").
 "`[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed.' Welsh[v. Wisconsin, 466 U.S. 740, 753 (1984)]; Mincey[v. Arizona, 437 U.S. 385, 393
(1978)]. '[T]he mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant.' People v. Lee, 83 A.D.2d 311, 444 N.Y.S.2d 100, 102-103 (1981), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 798
(1983). See also People v. Ouellette, 78 Ill.2d 511, 36 Ill. Dec. 666, 669-70, 401 N.E.2d 507, 510-11
(1979). `The presence of contraband without more does not give rise to exigent circumstances.' United States v. Torres, 705 F.2d 1287, 1297 (11th Cir. 1983).
 "There have been various attempts to formulate an all encompassing definition of exigent circumstances. See Harbaugh and Faust, 'Knock on Any Door' — Home Arrests After Payton and Steagald, 86 Dick.L.Rev. 191 (1982); Donnino and Girese, Exigent Circumstances For A Warrantless Home Arrest, 45 Alb.L.Rev. 90 (1980); Comment, Warrantless Arrests: Justification By Exigent Circumstances, 6 Hamline L.Rev. 191 (1983); W. LaFave, 2 Search and Seizure § 6.5 (1978). However, '[t]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.' United States v. Satterfield, 743 F.2d [827, 844 (11th Cir. 1984)]. The possibility that evidence will be destroyed is an exigent circumstance widely recognized by the courts. Note, Exigent Circumstances for Warrantless Home Arrests, 23 Ariz. L.Rev. 1171, 1177 (1981). '[W]hen police officers have probable cause to search a residence for evidence, and they reasonably believe that such evidence is threatened with loss from any source, they may make a warrantless search of the premises in order to preserve and protect that evidence.' Case note, Residential Searches to Prevent the Destruction of Evidence: An Emerging Exception to the Warrant Requirement, 47 U.Colo. L.Rev. 517, 532 (1976); Comment, Residential Searches to Prevent Destruction of Evidence: A Need for Strict Standards, 70 J.Crim. L. Crim. 255 (1979); 2 Search § 6.5(b).
 "In finding the existence of exigent circumstances due to the threatened destruction of evidence, the courts have applied such broad tests as the '"great likelihood that the evidence will be destroyed or removed before a warrant can be obtained," that the evidence is "threatened with imminent removal or destruction," or that the police "reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant."' 2 Search at p. 438, § 6.5(b).
 "`When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) *Page 1152 
the degree of urgency involved and the amount of time necessary to obtain a warrant, . . .; (2) reasonable belief that the contraband is about to be removed, . . .; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, . . .; (4) information indicating the possessors of the contraband are aware that the police are on their trail, . . .; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.". . .' United States v. Rubin, 474 F.2d 262, 268-69 (3rd Cir. 1973) (citations omitted). See also 2 Search at pp. 439-450."
Youtz v. State, 494 So.2d 189, 193-94 (Ala.Crim.App. 1986).
In this case, as discussed above, Officer Watkins had probable cause to believe that there was marijuana in the residence. Officer Watkins testified that, upon seeing a policeman at the door asking for the tenant, Cameron ran from the front door back into the house to the kitchen. Officer Watkins testified that, upon reaching the kitchen, Cameron immediately began to hide things in the kitchen that had, until that point, been in plain view. Officer Watkins also testified that, in his experience, if a person in possession of illegal drugs becomes aware that a police officer is in the vicinity, that person will destroy the contraband at the first opportunity. Taking all of this into consideration, Officer Watkins could have reasonably concluded from Cameron's suspicious actions that he would likely destroy or remove some portion of the marijuana. Therefore, there existed an exigent circumstance that, when coupled with probable cause, justified Officer Watkins's warrantless entry of the premises. See, e.g., United States v. Tobin,923 F.2d 1506 (11th Cir. 1991) (holding that agents could reasonably conclude from the defendants' hurried actions and furtive looks that the defendants were either aware or afraid that someone was watching them; destruction or removal of some portion of the narcotics was therefore a possibility). See also United States v. Miravalles, 280 F.3d 1328 (11th Cir. 2002) (holding that a reasonable belief that relevant evidence in the apartment, including paper cigar labels, was in imminent danger of destruction and, therefore, exigent circumstances existed).
For the reasons stated above, we hold that, under the limited circumstances of this case, that is, in a case where an officer approaches a residence for a legitimate and uncontrived reason and encounters the strong smell of marijuana and marijuana smoke emanating from the residence, coupled with the exigent circumstance of the potential destruction of contraband as evidenced by someone inside the residence running from the officer and attempting to hide or destroy contraband, a warrantless search is justified.
Therefore, the trial court did not abuse its discretion by denying Cameron's motion to suppress, and its judgment is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] The Court also found that the warrantless entry and search were not justified as being incident to a lawful arrest. Johnson, 333 U.S. at 16.
 *Page 339