COBB, Judge,
dissenting.
I respectfully dissent from the majority’s decision in an unpublished memorandum to affirm Bivens’s convictions and sentences.
Joe Michael Bivens pleaded guilty to trafficking in marijuana and one count of failing to affix an appropriate tax stamp, violations of §§ 13A-12-231(1) and 40-17A-9, Ala.Code 1975, respectively. The trial court sentenced him to serve coneur- *487 rent 10-year sentences, split with three years to serve. Bivens reserved for appellate review the issues underlying his motion to suppress evidence of the marijuana in this case.

Facts

Officer Greg Dixon testified that, on August 17, 2001, at around 6 p.m., he received a call from the dispatcher regarding a suspicious vehicle parked behind an apparently vacant residence. Officer Dixon testified that he knew that, in general, drug deals could occur in abandoned houses. He did not testify as to having had any experience with the residence in question.
When Officer Dixon arrived at the scene, it was still daylight. Officer Dixon “ran the tag” on the automobile. (R. 8-9.) The automobile was not stolen, and the tag number matched the description of the vehicle. Office Dixon then turned his attention to the house.
Looking in the windows of the house, Officer Dixon noticed that there were no curtains or furniture in the house, but that a light was on in the hallway. Officer Dixon found the fact that there was a light on in the house to be suspicious, and he tried to turn the doorknobs and open the windows to see if they were unlocked. (R. 11.) Officer Dixon then decided to knock on the door. Officer Dixon waited a minute, and, after no one answered, decided to return to his vehicle.
Before Officer Dixon could return to his vehicle, Jonjuan Lewis, Joe Michael Bivens’s codefendant, answered the door. Officer Dixon testified at the hearing that there was nothing unusual about Lewis’s appearance, but, in his report regarding the incident, he wrote that Lewis “started acting nervously.” (R. 51.) Officer Dixon asked him if he lived there. Lewis said that he did and that he could prove it by getting the lease from within the house.[1] Officer Dixon testified that, as Lewis turned to go get the lease, Officer Dixon unfastened the restraint on his firearm, entered the house, and followed Lewis. Officer Dixon testified that he entered the house
“[bjecause I didn’t believe he lived there. And when he advised that he was going to get a [lease], for my safety, because I didn’t believe he was actually coming back, if he did come back, I didn’t think he would come back with a [lease], with probably a weapon or something.”
(R. 40-41.) Officer Dixon testified that Lewis did not see him enter the house behind him, that Lewis did not invite him into the house, and that Officer Dixon did not ask to enter the house.
Officer Dixon testified that he smelled marijuana — plant marijuana, not burning marijuana — when Lewis opened the door, before he entered the house.[2] (R. 34, 51.) *488 However, Officer Dixon testified that, upon entering the house, he was not looking for marijuana. (R. 41, 55.)
Officer Dixon testified that, as he followed Lewis into the back of the house, Lewis walked down the hall “real slowly, which furthered [his] suspicion.” (R. 16.) Lewis reached a bedroom where a light was on, entered the bedroom, and tried to close the door behind him. Officer Dixon “pushed the door open, pushed the door back” to gain entry into the bedroom. (R. 18.) Officer Dixon testified that he pushed the door open “[f]or [his] safety, because [he] didn’t know what [Lewis] was — was he getting a gun or was he making break for the window or — I had no idea.” (R. 18.)
When Officer Dixon forced his way into the bedroom, he saw Bivens sitting on the floor chopping up marijuana with “a razor blade or something.” (R. 19.) He also saw a shoe box full of marijuana and packaged bags of marijuana. Officer Dixon “completely unholstered [his] weapon and pointed it at both of them and advised them not to move.” (R. 19.) Officer Dixon testified that he did this because Lewis “came toward him” when he saw Officer Dixon “reaching for [his] mic[rophone], [Lewis] knew [he] was about to call for backup.” (R. 20, 19.) Officer Dixon testified that, “[a]t that point, I felt my safety was in jeopardy.” (R. 20.)
After other officers arrived, the residence was searched. A gun was found inside a shoe box. Officer Dixon testified that, while he was ordering Bivens to “put his hands up,” the codefendant was “[r]ight over the shoe box.” (R. 22.) However, Officer Dixon did not see the weapon and did not know of its existence until the remainder of the residence was searched after other officers had arrived.
When asked if he had time to obtain a warrant, Officer Dixon testified that “[he] wouldn’t have gotten a warrant for that.” (R. 30.) When later asked if, at the time he entered the residence, he had sufficient evidence to secure a search warrant, Officer Dixon stated, “At that time as far as— no. No, sir.” (R. 40.)
Lewis testified that, on the day of the search, he owned the automobile and that he had rented the residence in question the day before the search. He testified that he was waiting for his furniture to be delivered on the afternoon in question. He testified that Officer Dixon demanded to see the lease. When he went to get the lease for Officer Dixon, Lewis closed the door, but Officer Dixon pushed the door open to gain entry into the house. Lewis testified that when Officer Dixon pushed his way into the bedroom, his gun was already drawn.

General Propositions of Search and Seizure Law

“[A] trial court’s ruling based upon conflicting evidence given at a suppression hearing is binding on this Court ... and is not to be reversed absent a clear abuse of discretion.” Jackson v. State, 589 So.2d 781, 784 (Ala.Crim.App.1991).
*489 “ ‘ “This court has long held that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. See, e.g., Chév-ere v. State, 607 So.2d 361, 368 (Ala. Cr.App.1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985); Chevere, supra, 607 So.2d at 368.” ’
“State v. Mitchell, 722 So.2d 814[, 820] (Ala.Cr.App.1998), quoting Rokitski v. State, 715 So.2d 859[, 861] (Ala.Cr.App.1997).”
State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999). There was absolutely no evidence indicating that Officer Dixon entered the residence because the marijuana was in plain view, or that his entrance was the result of consent, incident to a lawful arrest, a product of a hot pursuit or an emergency, a product of a stop and frisk situation, or a product of an inventory search. The majority, therefore, evaluated the circumstances to determine whether the search and seizure was justified on the basis of the existence of probable cause paired with an exigent circumstance. The majority holds that there was sufficient evidence of probable cause, coupled with sufficient evidence of an exigent circumstance, to justify the warrantless entry in question. I disagree on both points.

Probable Cause Coupled with Exigent Circumstances

A. Probable Cause

My main concern is a clear insufficiency of evidence of probable cause. The majority holds that the State’s evidence that the officer smelled marijuana when Lewis opened the front door was sufficient to constitute probable cause.
“It is well settled that warrantless entries to and searches of a residence are presumptively unreasonable and that the burden is on the government to demonstrate exigent circumstances justifying a warrantless entry and search. Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Landreth v. State, 600 So.2d 440 (Ala.Cr.App.1992). To justify a warrantless entry and search, the state needs to show both the existence of probable cause and exigent circumstances. United States v. Rodgers, 924 F.2d 219 (11th Cir.1991), cert. denied, 501 U.S. 1221, 111 S.Ct. 2834, 115 L.Ed.2d 1003 (1991), appeal after remand, 981 F.2d 497 (11th Cir.1993); Etheridge v. State, 414 So.2d 157 (Ala.Cr.App.1982).”
A.A.G. v. State, 668 So.2d 122, 126 (Ala.Crim.App.1995) (some internal citations altered). “The establishment of probable cause requires only that facts available to the officer at the moment of [entry] would warrant a person of reasonable caution to believe that the action taken by the officer was appropriate.” A.A.G., 668 So.2d at 127.
In Cameron v. State, 861 So.2d 1145 (Ala.Crim.App.2003), an officer stopped to investigate an improperly parked vehicle in front of a house. The State presented the following evidence during the hearing on the pretrial motion to suppress marijuana seized from the appellant’s residence:
“Officer Watkins testified that, when Cameron opened the door to the residence, a strong and overwhelming odor of marijuana emanated from the apartment. He also testified that he saw a large amount of smoke in the house. He testified that he recognized the smell *490 as marijuana based on his experience and training as a police officer and based on the fact that he had previously encountered the smell. This testimony was uncontroverted.”
861 So.2d at 1150. In upholding the trial court’s denial of the motion to suppress, we relied on the following language from Johnson v. United States, 338 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948):
“‘At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. We cannot sustain defendant’s contention, erroneously made, on the strength of Taylor v. United States, 286 U.S. 1 [ (1932) ], that odors cannot be evidence sufficient to constitute probable grounds for any search. That decision held only that odors alone do not authorize a search without [a] warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.’ ”
861 So.2d at 1150. We held:
“[T]he strong and overwhelming smell of marijuana emanating from the house, combined with Officer Watkins’s testimony regarding his ability to identify the distinctive odor of marijuana, established the existence of Officer Watkins’s probable cause to believe that contraband was present inside the residence.”
Cameron, 861 So.2d at 1150 (emphasis added).
Initially, I note that, in this case, Officer Dixon did not testify that the odor was strong and overwhelming; he claimed to smell plant marijuana, rather than burning marijuana and, thus, there was no smoke.
Additionally, although Officer Dixon testified that he had been a member of the police department for five years, he did not testify that he had ever smelled marijuana — in plant form or burning — during his experience and training as a police officer, or that he could recognize the distinctive smell of marijuana from his experience and training as a police officer. See Cameron, 861 So.2d at 1150. Had Officer Dixon testified in front of a magistrate in an attempt to obtain a search warrant for the premises, and had he testified to the same information that he presented to the trial court during the pretrial hearing, he would have testified only to “the presence of odors,” not that he was “qualified to know the odor.” Johnson, 333 U.S. at 13, 68 S.Ct. 367. I doubt that a magistrate familiar with the law of probable cause would have issued a search warrant on such sparse testimony.
Therefore, although Officer Dixon testified that he smelled marijuana, there was no foundation for the fact that he could indeed recognize such a smell. Because there was no evidence of Officer Dixon’s qualification for recognizing the smell of marijuana, I would hold that, under the facts of this case, there was insufficient evidence of probable cause to secure a warrant or, when combined with exigent circumstances, to justify a warrantless entry.

B. Exigent Circumstances

I am equally concerned with the quality and quantity of the evidence of the existence of exigent circumstances. The majority held that Officer Dixon’s testimony that he feared for his own safety and that he feared that Lewis was going to retrieve a weapon constituted sufficient evidence of *491 an exigent circumstance. Even if there were sufficient evidence of probable cause, and I believe there was not, I would find there to be insufficient evidence of the existence of an exigent circumstance to justify the warrantless entry into Lewis’s house.
“The burden rests on the State to prove the existence of an exigent circumstance to overcome the presumption of unreasonableness that attaches to warrantless residential entries and searches. McCammon v. State, 499 So.2d 811 (Ala.Crim.App.1986) (citing Welsh v. Wisconsin, 466 U.S. 740 (1984)). See also Vale v. Louisiana, 899 U.S. 30, 34 (1970) (‘The burden rests on the State to show the existence of such an exceptional situation.’).
“ ‘ “[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed.” Welsh [v. Wisconsin, 466 U.S. 740, 753 (1984) ]; Mincey [v. Arizona, 437 U.S. 385, 393 (1978)]. “[T]he mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant.” People v. Lee, 83 A.D.2d 311, 444 N.Y.S.2d 100, 102-103 (1981), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 798 (1983). See also People v. Ouellette, 78 Ill.2d 511, 36 Ill.Dec. 666, 669-70, 401 N.E.2d 507, 510-11 (1979). “The presence of contraband without more does not give rise to exigent circumstances.” United States v. Torres, 705 F.2d 1287, 1297 (11th Cir.1983).
“ ‘There have been various attempts to formulate an all encompassing definition of exigent circumstances. See Harbaugh and Faust, “Knock on Any Door” — Home Arrests After Payton and Steagald, 86 Dick.L.Rev. 191 (1982); Donnino and Girese, Exigent Circumstances For A Warrantless Home Arrest, 45 Alb.L.Rev. 90 (1980); Comment, Warrantless Arrests: Justification By Exigent Circumstances, 6 Hamline L.Rev. 191 (1983); W. La-Pave, 2 Search and Seizure § 6.5 (1978). However, “[t]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.” United States v. Satterfield, 743 F.2d [827, 844 (11th Cir.1984)]. The possibility that evidence will be destroyed is an exigent circumstance widely recognized by the courts. Note, Exigent Circumstances for Warrantless Home Arrests, 23 Ariz. L.Rev. 1171, 1177 (1981). “[W]hen police officers have probable cause to search a residence for evidence, and they reasonably believe that such evidence is threatened with loss from any source, they may make a warrantless search of the premises in order to preserve and protect that evidence.” Case note, Residential Searches to Prevent the Destruction of Evidence: An Emerging Exception to the Warrant Requirement, 47 U.Colo. L.Rev. 517, 532 (1976); Comment, Residential Searches to Prevent Destruction of Evidence: A Need for Strict Standards, 70 J.Crim. L. & Crim. 255 (1979); 2 Search § 6.5(b).
“ ‘In finding the existence of exigent circumstances due to the threatened destruction of evidence, the courts have applied such broad tests as the “ ‘great likelihood that the evidence will be destroyed or removed before a warrant can be obtained,’ that the evi *492 dence is ‘threatened with imminent removal or destruction,’ or that the police ‘reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant.’ ” 2 Search at p. 438, § 6.5(b).
“ ‘ “When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, ...; (2) reasonable belief that the contraband is about to be removed, ... ; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail, ...; and (5) the ready destructibility of the contraband and the knowledge ‘that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.’ ...” United States v. Rubin, 474 F.2d 262, 268-69 (3rd Cir.1973) (citations omitted). See also 2 Search at pp. 439-450.’
“Youtz v. State, 494 So.2d 189, 193-94 (Ala.Crim.App.1986).”
Cameron, 861 So.2d at 1150-52. Additionally,
“ ‘ “[T]he ultimate test for determining whether exigent circumstances exist justifying a warrantless entry ‘is whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.’” United States v. Cresta, 592 F.Supp. 889, 901 (D.Maine 1984).... “The exigent circumstances doctrine recognizes several common situations where the time consuming resort to a neutral magistrate for an arrest or search warrant is unnecessary, for example: hot pursuit, ... fleeing suspect, ... danger to arresting officer or the public from the suspect .” United States v. Kreimes, 649 F.2d 1185, 1192 (5th Cir.1981) (citations omitted).’
“Musgrove [v. State], 519 So.2d [565,] 572 [(Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala.1986) ]. See also Bush v. State, 523 So.2d 538 (Ala.Cr.App.1988).”
C.M.B. v. State, 594 So.2d 695, 699 (Ala.Crim.App.1991) (emphasis added). Furthermore, an officer’s belief that a suspect is carrying a weapon is a factor that may be considered in determining whether exigent circumstances exist for the purpose of making a warrantless entry. Id.
In Cameron, a case involving exigent circumstances based on the possibility that the contraband would be destroyed, this Court held that exigent circumstances existed to justify the warrantless entry into the appellant’s house, and the subsequent search and seizure of marijuana, based on evidence presented by the State that, upon seeing a policeman at the door asking for the leaseholder, Cameron ran from the front door back into the house to the kitchen. The police officer testified that, upon reaching the kitchen, Cameron immediately began to hide things in the kitchen that had, until that point, been in plain view. Furthermore, the officer testified that “in *493 his experience, if a person in possession of illegal drugs becomes aware that a police officer is in the vicinity, that person will destroy the contraband at the first opportunity.” 861 So.2d at 1152. We held:
“Taking all of this into consideration, Officer Watkins could have reasonably concluded from Cameron’s suspicious actions that he would likely destroy or remove some portion of the marijuana. Therefore, there existed an exigent circumstance that, when coupled with probable cause, justified Officer Watkins’s warrantless entry of the premises. See, e.g., United States v. Tobin, 928 F.2d 1506 (11th Cir.1991) (holding that agents could reasonably conclude from the defendants’ hurried actions and furtive looks that the defendants were either aware or afraid that someone was watching them; destruction or removal of some portion of the narcotics was therefore a possibility). See also United States v. Miravalles, 280 F.3d 1328 (11th Cir.2002) (holding that a reasonable belief that relevant evidence in the apartment, including paper cigar labels, was in imminent danger of destruction and, therefore, exigent circumstances existed).”
Cameron, 861 So.2d at 1152.
In a case involving exigent circumstances based on possible danger from the suspect to arresting officers or to the public, the appellant was arrested in his home without an arrest warrant and as a result of a warrantless entry for a violent murder. The Court held that exigent circumstances existed to justify the warrant-less entry based on evidence that, when police knocked, the appellant opened the door and attempted to slam it in the officers’ faces and that the officers were aware that the appellant was known to carry a weapon.
I do not believe that the facts of this case indicate that an exigent circumstance was created either by any evidence indicating that there was contraband in danger of immediate destruction[3] or by any evidence indicating any danger to Officer Dixon or to the public.
In this case, none of Officer Dixon’s testimony indicated that he thought Lewis was about to destroy contraband. In fact, Officer Dixon testified that he was not at all concerned about the marijuana at the time he entered the home. Officer Dixon testified that Lewis was moving slowly, not running about in an attempt to hide something. Thus, there was no evidence of an immediate threat to the presence of the contraband; there was no evidence of any threat to the contraband.
Additionally, there was insufficient evidence of any danger to the officer or to the public at the moment Officer Dixon decided to effect a warrantless entry on Lewis’s residence. The automobile parked behind the residence was perfectly legal. Officer Dixon testified that there was nothing unusual about Lewis’s appearance when he opened the door during daylight hours that afternoon, although he appeared to be nervous. Although he found the fact that the house, although without furniture, had electricity to be suspicious, Officer Dixon did not testify that Lewis’s behavior was suspicious. Lewis did not attempt to slam the door after seeing Officer Dixon standing at his threshold. Rather, Lewis offered to get proof that-he was residing at that address. Officer Dixon testified that, although Lewis stated that he was going to get the lease to the house, Officer Dixon did not believe him and thought Lewis “was about to make a — either about to *494 make a break for it.” (R. 15.) Officer Dixon did not testify to the basis of his opinion that Lewis was about “to make a break for it,” and no other evidence suggests that Lewis was preparing to flee or to get a weapon. Officer Dixon testified that this slow walking “furthered [his] suspicion,” but I do not find this belief reasonable.[4] (R. 16.) Officer Dixon also testified that, because Lewis was walking slowly, he “was wondering ... if he was planning on doing anything because he didn’t walk as if he was really going to get the deed.” (R. 16.)
The majority states that it finds exigent circumstances in the fact that Officer Dixon testified that he feared for his personal safety and thought Lewis may have been going to retrieve a weapon, rather than documentation concerning the occupancy of the house. Officer Dixon did testify on redirect examination that, before he entered the house, when Lewis turned to retrieve the lease, walking slowly, Officer Dixon “didn’t believe that he lived there. And when he advised that he was going to get [the lease], for my safety, because I didn’t believe he was actually coming back, if he did come back, I didn’t think he would come back with [a lease], with probably a weapon or something.” (R. 41.) However, there was no evidence indicating that Officer Dixon thought that Lewis might actually be carrying a weapon or that he was preparing to destroy contraband. Any danger to Officer Dixon based on the supposition that Lewis was going to retrieve a weapon was created when Officer Dixon entered the house, rather than retreating and calling for backup. Again, there was no evidence indicating that any member of the public was in danger.
Additionally, I am not at all certain that Officer Dixon’s belief was reasonable under the circumstances presented in this case. At the time of the search, it was daylight. The car in the back was not stolen. The dispatcher had reported that the house was vacant, but there was no “for rent” or “for sale” sign. The electricity was on in the residence. Officer Dixon had not been alerted that Lewis was wanted for a violent crime or that Lewis was known to carry a gun. Lewis did not react violently to the appearance of a police officer at his door. There was no evidence indicating that there were numerous innocent bystanders standing about who could have been injured by Lewis’s actions. There was no basis for Officer Dixon’s opinion that Lewis was going to get a gun, not a copy of the lease. There was no reason why, if Officer Lewis harbored such doubts as to his personal safety, without the existence of any other exigent circumstances, he could not have sought a search warrant; there was no reason in this case to forgo the required search warrant.
Officer Dixon did testify that, after he had entered the house, he thought Lewis may have been “getting a gun or ... making a break for the window” when Lewis entered the bedroom of the house and tried to close the bedroom door on Officer Lewis. (R. 18.) Additionally, Officer Dixon testified that he did not know of the presence of a weapon until after the premises had been secured and the search had been conducted and that he did not fear for his safety until after he had crossed the threshold into the residence, that is, until after he pushed his way into the bedroom. Thus, it was not his fear of a potential *495 danger that led him to enter the home; the fear of potential danger came after he had entered the home and discovered the marijuana inside. This danger is after-the-fact and irrelevant in an inquiry into whether a warrantless search was proper.
In conclusion, I believe there was no evidence indicating that there was an immediate threat that Lewis would destroy contraband, and neither was there any evidence indicating a danger to Officer Dixon or the public. Therefore, I believe there were no exigent circumstances to justify the warrantless entry into Lewis’s home.
A warrantless search is an action of last resort; such searches are inherently unconstitutional. I do not believe that, in this case, the State fulfilled its burden to overcome the inherent unconstitutionality of this warrantless search.
Under the facts of this case and for the reasons stated above, I believe that the trial court abused its discretion by denying Bivens’s motion to suppress evidence of the marijuana seized from the unconstitutional search of Lewis’s home. Therefore, I respectfully dissent.

. Officer Dixon testified that Lewis said he would get the "deed,” and Lewis testified that he turned to retrieve the "deed” for the officer, but apparently the two misspoke. This was a rental property, not property Lewis owned. Therefore, in speaking of the paper Lewis was trying to retrieve when Officer Dixon entered the residence, although the testimony mentions a deed, I use the term "lease” in my writing so as not to cause confusion as to whether Lewis owned or rented the house.

. Officer Dixon's report, written immediately following the incident, stated: "Upon entering the house, I smelled the strong odor of marijuana inside.” (R. 51.) Officer Dixon testified that, at the time he wrote the report, his memory about the events was “a little bit better on that particular date than it [was on the date of the hearing].” (R. 50.)
During the preliminary hearing in this case, Officer Dixon testified that he smelled marijuana after he entered the house.
During the pretrial hearing on the motion to suppress, Officer Dixon initially testified that, when he entered the residence, he "was *488 beginning to smell an odor of marijuana in the building,” (R. 15), and that he did not smell the marijuana prior to entering the residence (R. 17).
Later in the pretrial hearing, Officer Dixon testified that he smelled the plant marijuana in the back bedroom when Lewis opened the door, rather than upon entering the residence.
Apparently, because it denied Lewis's motion to suppress, the trial court must have believed Officer Dixon’s statement that he smelled the marijuana before he entered the residence. We resolve all credibility choices in favor of the trier of fact. D.L. v. State, 625 So.2d 1201, 1204 (Ala.Crim.App.1993).

. The majority does not speak to this issue, but I nonetheless address the lack of evidence of exigent circumstances regarding the impending destruction of contraband.

. In Cameron, we held that moving too quickly was cause for suspicion. If anything, slow movement by a suspect or someone under suspicion should be encouraged, rather than held to be suspicious. I am not stating that unusually slow movements by someone might never be suspicious, but there is no evidence in this case that Lewis was walking unusually slowly.