On Application for Rehearing

JOINER, Judge.
This Court’s opinion of June 7, 2013, is withdrawn, and the following is substituted therefor.
Natasha Rae Lee and codefendants Justin Andrew Bailey and Jennifer Leigh Clayton filed separate pretrial motions to suppress evidence from two warrantless searches conducted by the police on January 7, 2011, and January 28, 2011.[1] After a hearing, the trial court granted the motions to suppress. The State appeals.[2]
On November 9, 2011, the trial court held a hearing on the motions to suppress. At the hearing, Officer James Taylor, an employee with the Montgomery Police Department, testified that between 12:00 and 1:00 a.m. on January 7, 2011, he responded to a dispatch regarding an anonymous call about a methamphetamine lab at a particular apartment on Stonehenge Drive in Montgomery. After Officer Taylor arrived at the apartment complex and got out of his vehicle, he smelled an “ammonia like” odor that, from his training and experience, appeared to be from a methamphetamine lab. Officer Taylor admitted on cross-examination that he did not know exactly which apartment the smell was coming from. Officer Taylor testified that shortly thereafter Sgt. John Hall, along with members of the Montgomery Fire Department, arrived on the scene. Officer Taylor and Sgt. Hall knocked on the door of the apartment that was the subject of the anonymous call, and Bailey opened the door. Officer Taylor said he noticed that, after Bailey opened the door, the odor he had smelled earlier *281 got stronger. Officer Taylor testified that he did not see any fire or smoke inside the apartment. Officer Taylor testified that he and Sgt. Hall advised Bailey that they had received several calls about a methamphetamine lab in his residence and that Bailey denied any illegal activity and stated that “it must have been a prank call.” (R. 23.) Officer Taylor testified that the fire chief advised him and Sgt. Hall that members of the fire department were not going to “clear” the apartment.[3] Officer Taylor testified that he and Sgt. Hall thereafter entered the apartment; Officer Taylor testified, on cross-examination, that Bailey had given him permission to enter the apartment.[4] Officer Taylor testified that Clayton and two children who appeared to be two to four years old were inside the apartment and that the apartment appeared to be safe. After Officer Taylor left the apartment, he detained Bailey and learned, after running a warrant check, that Bailey had two misdemeanor warrants. After Officer Taylor ran the warrant checks he also found a bag of marijuana in Bailey’s pocket, and he later took Bailey to the city jail.[5] Officer Taylor testified that members of the fire depart.ment later advised him that they had found an inactive methamphetamine lab in the apartment.
Sgt. Hall testified that on January 7 he responded to a dispatch regarding a possible active methamphetamine lab at an apartment on Stonehenge Drive. Sgt. Hall testified that as he approached the building, he smelled a strong, pungent odor that, through his training and experience, indicated that there was a methamphetamine lab. Sgt. Hall testified that he could not tell from which particular apartment the smell was coming but that the odor became much stronger after Bailey opened the door to the apartment. Sgt. Hall did not observe any smoke or fire, and he and Officer Taylor thereafter entered the apartment at the request of the fire department.[6] Sgt. Hall admitted, on cross-examination, that he did not obtain a warrant before entering the apartment. *282 Sgt. Hall testified that he was in the apartment between 5 and 10 minutes. Sgt. Hall testified that while in the apartment he felt like he was in immediate danger because of the odor he smelled; Sgt. Hall explained, on cross-examination, that “[m]eth labs are known to explode as well as produce noxious fumes that can harm people.” (R. 64-65.) Sgt. Hall testified that members of the fire department later showed him what they believed to be an active methamphetamine lab inside the apartment. Sgt. Hall testified that he followed all “protocols” regarding the methamphetamine lab.[7]
Detective Joel Roberson testified that on January 7 he along with members of the hazardous-material squad of the fire department, responded to a 911 call reporting a methamphetamine lab in an apartment on Stonehenge Drive. Det. Roberson testified that on January 7, he entered the apartment and noticed a smell he associated with a methamphetamine lab; Det. Roberson later explained, on cross-examination, that, with regard to those who could be affected by the hazards of a methamphetamine lab, “[i]f you can smell it, you’re at risk.” (R. 150.) Det. Roberson found precursor elements to a methamphetamine lab in the apartment, including lithium batteries, a funnel, and some plastic bags. Det. Roberson testified that the methamphetamine lab appeared to be inactive at that time.[8] Roberson testified that no individuals were taken into custody on January 7.
Officer Raquel Sansing testified that around 12:00 to 1:00 a.m. on January 28, 2011, she responded to a dispatch regarding a possible methamphetamine lab at the same apartment on Stonehenge Drive that had been the subject of the January 7 call. Officer Sansing testified that after she arrived at the apartment, she observed Bailey, Clayton, and Lee coming down the stairs from the apartment. Officer Sans-ing testified that the door to the apartment had been left open and that she smelled a “strong, bitter ammonia-type smell.” (R. 82.) Officer Sansing testified that, while Officer Michael Anderson and members of the fire department searched the apartment, she detained Bailey, Clayton, and Lee. Officer Sansing testified that while she was detaining Bailey, Clayton, and Lee, she conducted a patdown search of Clayton and found a pill bottle containing a Xanax tablet, some nonprescription medication, and a pipe used for smoking methamphetamine. Officer Sansing said that when she felt those items during the pat-down, she knew that they were not weapons. Officer Sansing testified that she observed an officer perform a patdown search of Lee that produced two or three pipes used for smoking methamphetamine, a bag containing a substance believed to be marijuana, and a grinder containing marijuana substance; Officer Sansing testified that a patdown search of Bailey revealed two or three pipes used for smoking methamphetamine.
*283 Officer Anderson testified that on January 28 he was sent by dispatch to Stonehenge Drive to investigate a possible methamphetamine lab. After Officer Anderson arrived at the apartment building, he encountered Bailey, Clayton, and Lee outside the apartment and asked them where they were going, to which they replied that they were going to do laundry despite not having any laundry detergent or “anything like that that would really kind of sell that to make me believe that they were going to go — all running to do laundry at 1:20 in the morning.” (R. 115— 16.) Officer Anderson testified that while he was standing at the bottom of the stairs, he noticed an “ammonia” smell that, having previously encountered methamphetamine labs during his training and experience as a police officer, he would relate to a methamphetamine lab. Officer Anderson along with members of the fire department notified residents in adjacent apartments according to the standard procedure for a fire in an apartment complex. Officer Anderson testified that the fire chief indicated that he wanted the apartment to be “cleared” before he allowed members of the fire department to enter the apartment. Officer Anderson testified on cross-examination that a “haze smoke” inside the apartment was visible to him from outside the apartment. Officer Anderson and another officer thereafter equipped themselves with oxygen tanks and masks and entered the apartment. Officer Anderson admitted on cross-examination that no search warrant had been obtained before he entered the apartment. After Officer Anderson entered the apartment, he observed components he recognized as being used in a methamphetamine lab, but he did not touch anything. Officer Anderson observed that the source of the “haze smoke” was coming from a bubbling, pink liquid substance inside a two-liter bottle located in the back bedroom of the apartment.
Det. Roberson also testified that on January 28 he, along with members of the hazardous-material squad of the fire department, responded to a 911 call about a methamphetamine lab at the same address. Det. Roberson entered the apartment and observed a two-liter bottle containing a red substance that, he said, looked like “broken-down” pseudoephed-rine pills. Det. Roberson testified that he also saw two cans of butane, table salt, lithium batteries, pliers, and a marijuana cigarette. Det. Roberson testified that the evidence confirmed to him the presence of an active methamphetamine lab. Det. Roberson testified that, based on his observations, Lee, Bailey, and Clayton were taken into custody. Det. Roberson admitted on cross-examination that there was not a search warrant and that permission to enter the apartment had not been granted.
“Initially, this Court notes:
“ ‘ “ ‘When evidence is presented ore tenus to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,’ Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); ‘[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,’ Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make ‘“all the reasonable inferences and credibility choices supportive of the decision of the trial court.” ’ Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. ‘[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court.... Absent a gross abuse of discretion, a trial court’s resolution of *284 [such] conflictos] should not be reversed on appeal.' Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). However, ‘ “[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.” ’ State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). ‘ “ ‘[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.’ ” ’ Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App.2000).” ’
“C.B.D. v. State, 90 So.3d 227, 237 (Ala.Crim.App.2011) (quoting State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim. App.2005)). ““ “ ‘A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.’ ” ”” Byrd v. State, 78 So.3d 445, 450-51 (Ala.Crim.App.2009) (quoting Hodges v. State, 926 So.2d 1060, 1072 (Ala.Crim.App.2005), quoting in turn State v. Jude, 686 So.2d 528, 530 (Ala.Crim.App.1996), quoting in turn Dowdy v. Gilbert Eng’g Co., 372 So.2d 11, 12 (Ala.1979), quoting in turn Premium Serv. Corp. v. Sperry & Hutchinson, Co., 511 F.2d 225 (9th Cir.1975)).
“Further, it is well settled that war-rantless searches and seizures are per se unreasonable under the Fourth Amendment unless the State establishes that the search or seizure falls within a recognized exception. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985). Exceptions to the warrant requirement include: 1) objects in plain view; 2) consensual searches; 3) a search incident to a lawful arrest; 4) hot pursuit or emergency situations; 5) probable cause coupled with exigent circumstances; and 6) an investigatory detention and search for weapons pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995).”
State v. Moore, 115 So.3d 187, 189-90 (Ala.Crim.App.2012). “Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. Kinard v. State, 335 So.2d 924 (Ala.1976).” Williams v. State, 995 So.2d 915, 918 (Ala.Crim.App.2008). Here, the State argues that the trial court erred in finding, as to both searches, that there was no probable cause coupled with exigent circumstances.
“Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). ‘Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.’ Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App.1991).”
State v. Stallworth, 645 So.2d 323, 325 (Ala.Crim.App.1994). In the present case, the tip came from an anonymous 911 call. *285 “[A]nonymous tips may establish probable cause when corroborated by independent police investigation.” Bell v. State, 611 So.2d 1167, 1169 (Ala.Crim.App.1992) (quoting Illinois v. Gates, 462 U.S. 213, 241, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983)).
“This court has explained what the State must prove to show the existence of exigent circumstances as follows:
“ ‘ “ ‘[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed.’ Welsh [v. Wisconsin, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)]; Mincey [v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)]. ‘ “[T]he mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private' premises without a proper warrant.” ’ People v. Lee, 83 A.D.2d 311, 444 N.Y.S.2d 100, 102-103 (1981), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 798 (1983). See also People v. Ouellette, 78 Ill.2d 511, 36 Ill.Dec. 666, 669-70, 401 N.E.2d 507, 510-11 (1979). “‘The presence of contraband without more does not give rise to exigent circumstances.” United States v. Torres, 705 F.2d 1287, 1297 (11th Cir.1983).’
“ ‘ “There have been various attempts to formulate an all encompassing definition of exigent circumstances. See Harbaugh and Faust, ‘Knock on Any Door’-Home Arrests After Payton and Steagald, 86 Dick. L. Rev. 191 (1982); Donnino and Girese, Exigent Circumstances For A Warrantless Home Arrest, 45 Alb. L. Rev. 90 (1980); Comment, Warrant-less Arrests: Justification By Exigent Circumstances, 6 Hamline L. Rev. 191 (1983); W. LaFave, 2 Search and Seizure § 6.5 (1978). However, ‘[t]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.’ United States v. Satterfield, 743 F.2d [827, 844 (11th Cir.1984)]. The possibility that evidence will be destroyed is an exigent circumstance widely recognized by the courts. Note, Exigent Circumstances for Warrantless Home Arrests, 23 Ariz. L. Rev. 1171, 1177 (1981). ‘[W]hen police officers have probable cause to search a residence for evidence, and they reasonably believe that such evidence is threatened with loss from any source, they may make a warrantless search of the premises in order to preserve and protect that evidence.’ Case note, Residential Searches to Prevent the Destruction of Evidence: An Emerging Exception to the Warrant Requirement, 47 U. Colo. L. Rev. 517, 532 (1976); Comment, Residential Searches to Prevent Destruction of Evidence: A Need for Strict Standards, 70 J. Crim. L. & Crim. 255 (1979); 2 Search § 6.5(b).
“ ‘ “In finding the existence of exigent circumstances due to the threatened destruction of evidence, the courts have applied such broad tests as the ‘ “great likelihood that the evidence will be destroyed or removed before a warrant can be obtained,” that the evidence is “threatened with imminent removal or destruction,” or that the police “reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant.” ’ 2 Search at p. 438, § 6.5(b).
“ ‘ “ ‘When Government agents, however, have probable cause to be *286 lieve contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, ...; (2) reasonable belief that the contraband is about to be removed, ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail, ...; and (5) the ready destructibility of the contraband and the knowledge “that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.”...’ United States v. Rubin, 474 F.2d 262, 268-69 (3rd Cir.1973) (citations omitted). See also 2 Search at pp. 439-450.”
“ ‘Youtz v. State, 494 So.2d 189, 193-94 (Ala.Crim.App.1986).’
“Cameron [v. State], 861 So.2d [1145] at 1151-52 [(Ala.Crim.App.2003)].”
Williams, 995 So.2d at 918.
In Cameron v. State, 861 So.2d 1145 (Ala.Crim.App.2003), this Court considered whether' the odor of marijuana emanating from a house constituted sufficient'probable cause for a warrantless search. In Cameron, a police officer noticed an illegally parked vehicle outside a housing project and approached the apartment. The officer testified that he smelled a strong odor that, based on his experience and training as a police officer, he recognized to be marijuana and that he observed heavy smoke in the apartment. The officer also testified that, upon seeing the officer at the front door, the defendant turned and ran. In upholding the trial court’s denial of a motion to suppress the marijuana evidence found during the warrantless search, we relied on Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), which states:
“ ‘At the ' time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. We cannot sustain defendant’s contention, erroneously made, on the strength of Taylor v. United States, 286 U.S. 1 [(1932)], that odors cannot be evidence sufficient to constitute probable grounds for any search. That decision held only that odors alone do not authorize a search without [a] warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.’ ”
861 So.2d at 1150. We held “that the strong and overwhelming smell of marijuana emanating from the house, combined with [an officer’s] testimony regarding his ability to identify the distinctive odor of marijuana, established the existence of [an officer’s] probable cause to believe that contraband was present inside the residence.” 861 So.2d at 1150. See Smith v. State, 606 So.2d 174 (Ala.Crim.App.1992); *287 Key v. State, 566 So.2d 251 (Ala.Crim.App.1990); and Sterling v. State, 421 So.2d 1375 (Ala.Crim.App.1982).
On appeal, the State argues that on January 7 and January 28, the police had probable cause to believe that contraband was present in the apartment because they could smell an odor of what they thought, based on the officers’ training and experience, was an operating methamphetamine lab emanating from the apartment. The State also argues that the presence of an active methamphetamine lab is an exigent circumstance that justified immediate .entry into the apartment. We agree with the State that there was probable cause coupled with exigent circumstances to justify the January 28 search of the apartment; however, we hold that the trial court did not err in granting the motions to suppress regarding the January 7 search of the apartment and the January 28 searches of Lee, Bailey, and Clayton.
The trial court specifically identified the basis for granting the pretrial motions to suppress regarding the January 7 and January 28 searches of the apartment as follows: (1) on January 7, neither officer obtained permission to enter the apartment; (2) one officer testified that he entered the apartment on January 7 and that he did not feel he was in any danger; (3) both officers testified that on January 7 they could smell a suspicious odor when they arrived on the scene, but could not tell from .which apartment it was coming; (4) one of the officers testified that on January 7 he could not see any smoke, fire, or contraband from the door of the apartment; (5) on January 7 there was no active methamphetamine lab in the apartment; (6) on January 28 neither officer could see any fire or smoke from outside the apartment; (7) on January 28 there were no outward signs that danger was imminent; (8) one police officer testified he entered the apartment on January 28 and that did not feel he was in any type of danger; and (9) there was a lack of testimony about an emergency on January 28.

I. The Searches of the Apartment

In Williams, this Court recognized that the discovery of an operating methamphetamine lab “constitutes an exigent circumstance justifying a warrantless search.” 995 So.2d at 921. In that case, the police conducted a “knock and talk” after having received information from a confidential informant regarding a methamphetamine lab at a certain address. An officer noticed a chemical odor that he associated with the manufacture of methamphetamine and saw, in the shed behind the mobile home, a vase that contained a boiling liquid. Based on the officer’s belief that a methamphetamine lab was operating inside the mobile home, the police conducted a warrantless search of the mobile home. This Court held:
“Based on the inherent dangers of an operating methamphetamine lab, we now hold that discovery of such a lab by law-enforcement officials constitutes an exigent circumstance justifying a war-rantless search. Here, law-enforcement officials were investigating a tip from a confidential informant that a methamphetamine lab was being operated at a certain location. Upon arriving at that location, the investigators smelled odors associated with a methamphetamine lab in a shed and emanating from Williams’s mobile home. One of the investigators saw an ongoing ‘cook’ of methamphetamine in the shed. Under these circumstances, the law-enforcement officials acted properly in entering the mobile home and searching it room by room to clear it. Therefore, the trial court properly denied Williams’s motion *288 to suppress evidence seized during the search of the mobile home.”
995 So.2d at 921 (emphasis added).
In this case, on January 28 Officers Sansing and Anderson responded to an apartment building after having received a dispatch regarding an anonymous 911 call about an operating methamphetamine lab. In determining that the State had failed to prove probable cause in this case, the trial court noted in its written order that on January 28 the police had only an anonymous call before they approached the apartment and that they could have appeared before a magistrate to secure a warrant prior to the search. As explained below,' however, the evidence presented indicated that police work was done to corroborate the anonymous tip. Officer Sans-ing testified that the door to the apartment had been left open and that she smelled a “strong, bitter ammonia-type” odor emanating from the apartment. Similarly, Officer Anderson testified that while standing outside the apartment, he smelled an “ammonia” odor that, having previously encountered methamphetamine labs during his training and experience as an officer, he would relate to a methamphetamine lab. Additionally, Officer Anderson testified that on January 28 Bailey, Clayton, and Lee were unable to “sell” him their story that they were leaving the apartment to do laundry. In Cameron, we noted that in determining whether an officer has probable cause to enter a dwelling “requires only that facts available to the officer at the moment of [entry] would warrant a person of reasonable caution to believe that the action taken by the officer was appropriate.” 861 So.2d at 1149. In light of the uncontroverted testimony described above regarding the January 28 search of the apartment, we conclude that the police had probable cause to believe that an active methamphetamine lab was in the apartment on January 28. Cameron, supra.
Further, the trial court enumerated in its written order regarding the January 28 search that “there was a lack of testimony about an emergency.” Officer Anderson’s testimony, however, indicated that he believed that an active methamphetamine lab was present in the apartment. Williams, supra. Indeed, Officer Anderson testified that, in addition to the “ammonia” smell that was emanating from the open door to the apartment, he observed a “haze smoke” while standing outside the apartment. Officer Anderson testified that he, along with members of the fire department, notified residents in adjacent apartments according to standard procedure taken when there is a fire in an apartment complex. Officer Anderson thereafter entered the apartment and observed the source of the “haze smoke” as coming from the bubbling, pink liquid substance inside a two-liter bottle located in the back bedroom of the apartment, which was later confirmed as an active methamphetamine lab.
Based on the undisputed evidence that there was “haze smoke” visible from outside the apartment, coupled with the strong “ammonia” odor emanating from the open door of the apartment, we find that the record does not support the trial court’s written findings in support of granting the suppression motion as to the January 28 search of the apartment. See State v. Moore, 115 So.3d 187 (Ala.Crim.App.2012) (‘“Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ ” (quoting C.B.D. v. State, 90 So.3d 227, 237 (Ala.Crim.App.2011))).
*289 Conversely, the State has not demonstrated that the trial court erred in its finding that the January 7 search of the apartment lacked sufficient evidence of the existence of exigent circumstances.' On January 7, Officers Taylor and Hall were unable to determine from which apartment the odor they were smelling was coming until Bailey opened the door to the apartment. Officer Taylor testified that he did not see any fire or smoke inside the apartment. In fact, Officer Taylor testified that the apartment appeared to be safe. Thus, based on Taylor’s testimony that the apartment appeared to be safe and the testimony that the officers were unable to determine from which apartment the odor they were smelling was coming, the trial court did not abuse its discretion in finding there was a lack of testimony about the existence of exigent circumstances on January 7, and the State has not shown that the trial court improperly granted the motion to suppress with regard to the January 7 search.
II. January 28 Searches of Lee, Bailey, and Clayton
The State concedes that the trial court properly suppressed the evidence seized from Lee, Bailey, and Clayton on January 28th. Although the State points to testimony by Officer Sansing indicating that the patdown searches were conducted to ensure officer safety, it acknowledges that the record is otherwise silent. Thus, the State contends that while conducting the patdown searches to ensure officer safety was likely reasonable under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), there was no evidence in the record to show that the actual seizure of the evidence was justified under Terry. Further, the State notes that no evidence was presented to show if the searches were conducted pursuant to any exception under the warrant requirement, including a search incident to a lawful arrest. Based on this record, it cannot be said that the State met its burden of proving that the warrantless searches were constitutional. Accordingly, the trial court properly suppressed the drug paraphernalia recovered from the January 28 searches of Lee, Bailey, and Clayton.

III. Conclusion

That part of the trial court’s order granting the motions to suppress the evidence seized as a result of the January 7 search of the apartment and the January 28 searches of Lee, Bailey, and Clayton is affirmed.[9] That part of the order granting the motion to suppress the evidence seized as a result of the January 28 search of the apartment is reversed, and the cases are remanded for further proceedings consistent with this opinion.
CR-11-1865 — APPLICATIONS OVERRULED; OPINION OF JUNE 7, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CR-11-1866 — APPLICATIONS OVERRULED; OPINION OF JUNE 7, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CR-11-1867 — APPLICATIONS OVERRULED; OPINION OF JUNE 7, 2013, WITHDRAWN; OPINION SUBSTITUT *290 ED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WINDOM, P.J.; and WELCH, KELLUM, and BURKE, JJ., concur.

. In July 2011, Natasha Rae Lee was indicted . for two counts of unlawful possession of a controlled substance, see § 13A-12-212, Ala. Code 1975, one count of second-degree unlawful possession of marijuana, see § 13A-12-214, Ala.Code 1975, and one count of first-degree unlawful manufacturing of a controlled substance, see § 13A-12-218, Ala.Code 1975; Jennifer Leigh Clayton was indicted for two counts of first-degree unlawful manufacturing of a controlled substance, see § 13A-12-218, Ala.Code 1975, and one count of unlawful possession of drug paraphernalia, see § 13A-12-260, Ala.Code 1975; and Justin Andrew Bailey was indicted for two counts of first-degree unlawful manufacturing of a controlled substance, see § 13A-12-218, Ala.Code 1975, one count of second-degree unlawful possession of marijuana, see § 13A-12-214, Ala.Code 197, and one count of unlawful possession of drug paraphernalia, see § 13A-12-260, Ala.Code 1975.

. We have consolidated the three appeals for the purpose of issuing one opinion.

. Officer Taylor explained that members of the fire department refused to enter the apartment until he and Sgt. Hall had rendered it safe for them to enter the apartment.

. Officer Taylor testified specifically "that [Bailey] basically said, 'See for yourself.’" (R. 44.) We note that the trial court stated in its order that neither officer obtained permission to enter the apartment. Although consent is an exception to the warrant requirement, see, e.g., Baird v. State, 849 So.2d 223, 229 (Ala.Crim.App.2002), the circuit court’s order rejected Officer Taylor’s assertion that Bailey consented to the search, and the State does not argue on appeal that Bailey consented to the January 7 search.

. In its brief, the State argues that the January 7 search of Bailey’s person was constitutionally permissible because it was conducted pursuant to a lawful search incident to arrest. Bailey’s motion to suppress initially addressed only the January 28 searches. Prior to the hearing, Bailey moved to amend his m.otion to suppress to include the January 7 searches of his person and apartment. The motion to amend was not specifically ruled upon by the circuit court. On appeal, Bailey argues that the January 7 search of his person resulted in both an unlawful-possession-of-marijuana charge with the City of Montgomery, case no. 2011CRA000138D, and an indictment — the subject of which is discussed in this opinion. Bailey argues that the municipal charge was later nol-prossed by Municipal Court Judge Les Hayes on March 9, 2012. We pote that the circuit court does not directly address the January 7 search of Bailey’s person; therefore, we do not express any opinion as to that search.

. Sgt. Hall testified: "I was advised by the fire department that they needed to clear that residence to make sure that there was nothing in there that would endanger the public. But they would not clear that residence until after I cleared the residence to make sure there were no other people inside for their safety.” (R. 52-53.)

. Sgt. Hall explained that the “protocols” regarding a possible methamphetamine lab include having "to keep the residence or business or whatever area clear and secure so that no one goes in there, because people can get hurt from the odors. Meth labs are known to explode. So we also have to contact — we also had to contact all the surrounding apartments and clear those apartments out until such time as it is deemed safe for them to go back in.” (R. 55-56.)

. Det. Roberson’s testimony that the methamphetamine lab found on January 7 was inactive was inconsistent with Sgt. Hall's testimony that members of the fire department later showed him what they believed to be an active methamphetamine lab inside the apartment.

. In light of our holding that the evidence from the January 7 search should have been suppressed and because the State has asserted that Lee has not been charged based on any evidence from the January 7 search, we need not address whether Lee had standing to .challenge the January 7 search. We further note that the State does not challenge standing with regard to Bailey and Clayton; thus, the propriety of that search is properly before üs.