STUART, Justice.
Jennifer Leigh Clayton[1] and Justin Andrew Bailey[2] filed separate motions requesting that the trial court suppress evidence seized in a warrantless search of their apartment by law-enforcement officers on January 7, 2011. After a hearing, the trial court granted their motions to suppress the evidence. The State appealed, and the Court of Criminal Appeals affirmed the trial court’s order as to the January 7 search.[3] State v. Lee, 155 So.3d 278 (Ala.Crim.App.2013).[4] The State petitioned this Court for certiorari review of *292 the decision of the Court of Criminal Appeals. We reverse and remand.

Facts and Procedural History

The following evidence was presented at the suppression hearing. On January 7, 2011, between 12 a.m. and 1 a.m., Officer James Taylor and Sgt. James Hall, Montgomery law-enforcement officers, as well as other Montgomery law-enforcement officers and Montgomery firefighters, received a dispatch[5] indicating that a methamphetamine laboratory was in operation at an apartment on Stonehenge Drive in Montgomery. Officer Taylor and Sgt. Hall testified that when they arrived at the apartment complex[6] they could smell an odor that they knew from their training and experience was consistent with the chemicals used during the production of methamphetamine. Officer Taylor described the odor as a distinct, strong, “ammonia-like,” nauseating odor that is easily recognizable once one knows it to be consistent with the process of manufacturing methamphetamine. Sgt. Hall described the odor as very strong, pungent, and offensive, explaining that it almost burned the sinuses when inhaled.
The officers, in an effort to determine the origin of the odor, knocked on the door of the apartment. The officers testified that when Bailey opened the door the odor they knew to be consistent with the manufacture of methamphetamine grew stronger. The officers informed Bailey that they had received calls about a strong odor coming from his residence and that it had been reported that a methamphetamine laboratory was being operated in the apartment. Bailey responded that the calls had to be prank calls because no illegal activity was going on in the apartment. Sgt. Hall informed Bailey and Clayton, who was also present with two small children, that law-enforcement officers had to enter the apartment and conduct a protective sweep to clear the residence of all occupants so that the fire department could enter and check the apartment for safety reasons.
Sgt. Hall and Officer Taylor testified that they then searched each room of the apartment “to make sure there was nobody else in the apartment.” Officer Taylor testified that they spent approximately five minutes in the apartment and that the apartment “appeared to be safe.” Sgt. Hall testified that because of the odor he and his officers did not stay in the apartment long, just “long enough to make sure that the apartment was clear, long enough to allow the infant to be properly clothed for the cold weather.” After Officer Taylor and Sgt. Hall completed the protective sweep and left the apartment with Bailey, Clayton, and her two children, they turned the apartment over to the firefighters, who went inside to “mak[e] sure there [were] no chemicals in there that could explode endangering the other residents in the building.” Additionally, law-enforcement officers had the residents of the other apartments leave their residences until the fire department determined that they were not in danger from the process of manufacturing methamphetamine and it was safe to reenter the apartments.
During the firefighters’ search of the apartment, they located a methamphetamine “laboratory” inside a cooler in a *293 closet. The laboratory was not operating at the time. After the firefighters showed the laboratory to Sgt. Hall, Sgt. Hall notified the on-call narcotics officer, Detective Joel Roberson. Sgt. Hall testified that even after the methamphetamine laboratory was found he and the officers continued to secure the area because “people can get hurt from the odors” and “meth labs are known to explode.”
Detective Roberson testified that when he arrived at the apartment complex he could smell an odor that, based on his training and experience, he knew to be consistent with the odor created during the manufacture of methamphetamine. Detective Roberson stated that when he entered the apartment with the Montgomery Fire Department’s hazardous-materials crew a member of the crew showed him a foam cooler, which contained “everything you needed to [manufacture] methamphetamine.” Detective Roberson also found other materials in the apartment known to be associated with manufacturing methamphetamine, including lithium batteries, a funnel hidden under a bed, and small plastic bags. After Detective Roberson had photographed the methamphetamine laboratory, a crew from the Drug Enforcement Administration collected and disposed .of the materials.
When questioned at the hearing on the motion to suppress about the reason for conducting a warrantless entry into and search of the apartment, Sgt. Hall testified that “[m]eth[amphetamine] labs are known to explode as well as produce noxious fumes that can harm people” and that his intent in going into the apartment was “to make sure that the public remain safe.” Sgt. Hall further stated that when he was “clearing” the apartment he felt like he was in danger and could be harmed by the odor. He stated that he limited the number of officers who entered the apartment because of the adverse health effects breathing the chemicals used in the manufacture of methamphetamine can cause. Sgt. Hall testified that he filed a letter of notice with his supervisor documenting that he had been exposed to a methamphetamine laboratory in case health issues later arose from the exposure. When defense counsel asked Sgt. Hall if he felt like he was in immediate danger, Sgt. Hall responded: ‘Tes, sir. I did.... Due to the odor that I was smelling, and I knew ... what those odors- can cause, harmful to me, so yes, sir, I did feel like that I was in danger and could be harmed.”
Likewise, Officer Taylor testified that, because of the odor, he did not want to enter the apartment. He explained that, although the odor in the apartment did not appear to hurt him, Sgt. Hall, Clayton, Bailey, or the children, an emergency situation existed because “there was still the odor.”
Detective Roberson testified that the manufacture of methamphetamine creates a high risk of explosion because the chemicals used in the process become extremely volatile when combined and can react violently, bursting into flames. He further testified that the manufacture of methamphetamine creates a health hazard for anyone who is near the methamphetamine laboratory. He explained:
“If you can smell it, you’re at risk. The proper way to handle this [investigation of a methamphetamine laboratory is] ... anybody that goes anywhere near this lab should have on a respirator, protective clothing, protective suit and that kind of stuff.... You know, it can — anywhere that there is air ducts, air vents that the chemicals can travel, it can affect those areas, too.”
The trial court concluded that no exigent circumstances existed to justify entry into, or the search of, the apartment because *294 “there was no outward sign that danger was imminent” and because one officer testified that “he entered the apartment and did not feel he was in any type of danger.” The trial court granted Clayton’s and Bailey’s motions to suppress. The Court of Criminal Appeals affirmed the trial court’s order as to the January 7 search.

Standard of Review

“ ‘ “ ‘This Court reviews pure questions of law in criminal cases de novo.’ ” ’ Ex parte Brown, 11 So.3d 933, 935 (Ala.2008) (quoting Ex parte Morrow, 915 So.2d 539, 541 (Ala.2004), quoting in turn Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003)).” Hiler v. State, 44 So.3d 543, 546 (Ala.2009).

Discussion

The State contends that the Court of Criminal Appeals erred in holding that the trial court properly granted Clayton’s and Bailey’s motions to suppress the evidence seized from the January 7, 2011, warrant-less entry into and search of their apartment.
The Fourth Amendment to the United States Constitution states:
“The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.”
Article I, § 5, Ala. Const, of 1901, states the same fundamental principle and also applies to this case.
In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the United States Supreme Court recognized that there are situations where the requirement that law-enforcement officers secure a warrant before entry into a person’s residence may be obviated. The Supreme Court explained:
“Crime, even in the privacy of one’s own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.
“There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate’s warrant for search may be dispensed with.”
333 U.S. at 14-15.
In Cameron v. State, 861 So.2d 1145, 1149 (Ala.Crim.App.2003), the Alabama Court of Criminal Appeals recognized one of the exceptional circumstances that justifies a warrantless entry and search of a residence, stating:
“ ‘It is well settled that warrantless entries to and searches of a residence are presumptively unreasonable and that the burden is on the government to demonstrate exigent circumstances justifying a warrantless entry and search. Welsh v. Wisconsin, 466 U.S. 740 (1984); Payton v. New York, 445 U.S. 573 (1980); Landreth v. State, 600 So.2d 440 (Ala.Cr.App.1992). To justify a warrantless entry and search, the state needs to show both the existence of probable cause and exigent circumstances. United States v. Rodgers, 924 F.2d 219 (11th Cir.1991), *295 cert. denied, 501 U.S. 1221, 111 S.Ct. 2884, 115 L.Ed.2d 1003 (1991), appeal after remand, 981 F.2d 497 (11th Cir.1993); Etheridge v. State, 414 So.2d 157 (Ala.Cr.App.1982).’
“A.A.G. v. State, 668 So.2d 122, 126 (Ala.Crim.App.1995) (some internal citations, altered).”
In Wedgeworth v. State, 610 So.2d 1244, 1247-48 (Ala.Crim.App.1992), the Court of Criminal Appeals held that law-enforcement officers may conduct a warrantless search of a motel room if the officers have probable cause to believe that an illegal activity had been or was being committed and there is an exigent circumstance, stating:
“This court has ... held ... that probable cause combined with the existence of exigent circumstances justifies a warrantless search. Cooper v. State, 480 So.2d 8 (Ala.Cr.App.1985). See also Blaine v. State, 366 So.2d 353 (Ala.Cr.App.1978). Moreover, an officer has probable cause to conduct a search if a reasonably prudent person based on the facts and circumstances that the officer knows would be justified in concluding that the object of the search or items sought are connected with criminal activity, and that they will be found in the place to be searched. Gord v. State, 475 So.2d 900 (Ala.Cr.App.1988 198[5]).
“... [T]his court has ruled that exigent circumstances exist to justify a warrantless search upon a reasonable cause to believe that those premises contain individuals in imminent danger of death or severe bodily harm. Ash v. State, 424 So.2d 1381 (Ala.Cr.App.1982). Moreover, where exigent circumstances exist and there is probable cause to believe that evidence of a crime may be found, an immediate warrantless search is justified as an exception to the Fourth Amendment’s warrant requirement. Hancock v. State, 368 So.2d 581 (Ala.Cr.App.), writ denied, 368 So.2d 587 (Ala. ... 1979).
“... The Fourth Amendment does not require police officers to delay in the course of an investigation of a serious crime if to do so would endanger the lives of others. Jones v. State, 49 Ala.App. 438, 272 So.2d 910 (1973).”
Mindful of these principles of law, this Court now considers whether the law-enforcement officers had probable cause to believe that an illegal activity had been or was being committed in Clayton and Bailey’s apartment coupled with an exigent circumstance so as to justify the warrant-less entry and search of the apartment.

A. Probable Cause

The State contends that the law-enforcement officers had probable cause to enter and search Clayton and Bailey’s apartment because, it argues, when Bailey opened the apartment door the odor known to them to be consistent with the process of manufacturing methamphetamine grew stronger in intensity, indicating that the occupants of the apartment were engaging in an illegal activity — the manufacture of methamphetamine — inside the apartment.
In Adams v. State, 815 So.2d 578, 580-81 (Ala.2001), this Court recognized the standard for determining the existence of probable cause, stating:
“In Woods v. State, 695 So.2d 636 (Ala.Crim.App.1996), the Court of Criminal Appeals explained the standard for determining the existence of probable cause:
“ ‘ “Whether there is probable cause [to] merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S.
*296 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). ‘Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.’ Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App.1991).”
“ ‘State v. Stallworth, 645 So.2d 323, 325 [(Ala.Crim.App.1994)].... “When we speak of probable cause, we are dealing with probabilities which are factual and practical considerations of everyday experience.” [Sterling v. State, 421 So.2d 1375, 1381 (Ala.Crim.App.1982)].’
“695 So.2d at 640 (citations omitted).”
In Johnson v. United States, supra, law-enforcement officers had received information from a confidential informant that a person was smoking opium, an illegal controlled substance, in a hotel room. The law-enforcement officers, who had been sent to investigate the odor, were experienced in narcotics, recognized the odor of burning opium while they were in the hall, and determined that the odor was emanating from a certain room. The officers knocked and informed the occupant that they were law-enforcement officers. When the occupant opened the door, one of the officers stated that he wanted to discuss the opium smell in the room. The occupant denied that there was such a smell. The law-enforcement officers then arrested the occupant, searched the room, and seized opium and its smoking apparatus. Although the United States Supreme Court held that the warrantless entry and search of the room was unconstitutional because an exigent circumstance did not exist to excuse the need for a warrant, the Court did state that the odor known to the officers as the odor of burning opium could constitute probable cause for issuing a warrant, stating:
“At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a warrant. We cannot sustain defendant’s contention, erroneously made, on the strength of Taylor v. United States, 286 U.S. 1 [(1932)], that odors cannot be evidence sufficient to constitute probable cause grounds for any search. That decision held only that odors alone do not authorize a search without [a] warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.”
333 U.S. at 13. See also Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (“Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause.”).
In Cameron v. State, supra, the Court of Criminal Appeals held that the overwhelming odor of marijuana emanating from a house, combined with the law-enforcement officer’s testimony explaining his ability, based on his training and experience, to identify the odor of marijuana established that probable cause existed for the officer to believe that an illegal substance was located inside the residence. Cf. Blake v. State, 772 So.2d 1200, 1205 (Ala.Crim.App.2000) (holding that the odor of drugs emanating from a vehicle provided probable *297 cause to search the vehicle); Adams v. State, 815 So.2d at 581 (“A police officer’s detecting the smell of raw or burned marijuana coming from a particular place or person is sufficient to provide probable cause to search that place or person.”).
In this case, the evidence establishes that the law-enforcement officers had probable cause to believe that an illegal activity — the unlawful manufacturing of methamphetamine — was or had been occurring inside Clayton and Bailey’s apartment. The law-enforcement officers testified that when Bailey opened the door to the apartment the odor that they knew, based on their training and experience, to be consistent with the process of manufacturing of methamphetamine became stronger.[7] Because the evidence established that the odor consistent with the process of manufacturing methamphetamine emanated from Clayton and Bailey’s apartment and that the officers, based on their training and experience, had the ability to recognize the odor, the law-enforcement officers had probable cause to believe that the occupants of the apartment were engaged in the illegal activity of manufacturing methamphetamine inside the apartment. A.A.G. v. State, 668 So.2d 122, 127 (Ala.Crim.App.1995) (“The establishment of probable cause requires only that facts available to the officer at the moment of [entry] would warrant a person of reasonable caution to believe that the action taken by the officer was appropriate.”). Cf. Adams v. State, supra.

B. Exigent Circumstance

The State contends that the dangers to the public created by the process of manufacturing methamphetamine constitute an exigent circumstance that requires immediate action from law-enforcement officers to protect the public and that overcomes the delay incident to obtaining a warrant. Clayton and Bailey disagree, arguing that the statements and actions of the law-enforcement officers in this case establish that there was no danger of harm to themselves or the public. Therefore, they maintain that an exigent circumstance did not exist that authorized the warrantless entry into and search of their apartment by law-enforcement officers.
“ ‘The exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.”’ Youtz v. State, 494 So.2d 189, 193 (Ala.Crim.App.1986) (quoting United States v. Satterfield, 743 F.2d 827, 844 (11th Cir.1984)).
“The burden rests on the State to prove the existence of an exigent circumstance to overcome the presumption of unreasonableness that attaches to warrantless residential entries and searches. McCammon v. State, 499 So.2d 811 (Ala.Crim.App.1986) (citing Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)). See also Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (‘The burden rests on the State to show the existence of such an exceptional situation.’).
“ ‘ “[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed.” Welsh [v. Wisconsin, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)]; Mincey [v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)]. “[T]he mere
*298 presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant.” People v. Lee, 83 A.D.2d 311, 444 N.Y.S.2d 100, 102-103 (1981), cert, denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 798 (1983). See also People v. Ouellette, 78 I11.2d 511, 36 IlLDee. 666, 669-70, 401 N.E.2d 507, 510-11 (1979). “The presence of contraband without more does not give rise to exigent circumstances.” United States v. Torres, 705 F.2d 1287, 1297 (11th Cir.1983).
“ ‘There have been various attempts to formulate an all encompassing definition of exigent circumstances. See Harbaugh and Faust, “Knock on Any Door” — Home Arrests After Payton and Steagald, 86 Dick. L.Rev. 191 (1982); Donnino and Gírese, Exigent Circumstances For A Wam~antless Home Arrest, 45 Alb. L.Rev. 90 (1980); Comment, Warrantless Arrests: Justification By Exigent Circumstances, 6 Hamline L.Rev. 191 (1983); W. LaFave, 2 Search and Seizure § 6.5 (1978). However, “[t]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.” United States v. Satterfield, 743 F.2d [827, 844 (11th Cir.1984) ].’ ”
Cameron v. State, 861 So.2d at 1150-51 (quoting Youtz, 494 So.2d at 193). See Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001)(de-fíning exigent circumstances as a “specially ' pressing or urgent law enforcement need”); Brigham City, Utah v. Stuart, 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (noting that any warrantless search entry based on exigent circumstances must be supported by a genuine exigency).
The United States Supreme Court has held that “‘[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.’ ” Mincey v. Arizona, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (quoting Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir.1963)). For example, law-enforcement officers can enter a residence without a warrant to render emergency assistance to an injured person or to protect a person from immediate injury. Mincey, 437 U.S. at 392. Moreover, the state of mind of the law-enforcement officer is immaterial “as long as the circumstances, viewed objectively, justify [the officer’s] action.” Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).
Courts have recognized the dangers created during the process of manufacturing methamphetamine, and numerous cases have upheld warrantless searches by law-enforcement officers who had probable cause to believe that they had located an active methamphetamine-manufacturing operation. See Williams v. State, 995 So.2d 915 (Ala.Crim.App.2008); Kleinholz v. United States, 339 F.3d 674 (8th Cir.2003) (noting that the volatile nature of an operating methamphetamine laboratory can create a danger supporting the finding of an exigent circumstance justifying an immediate search); Louisiana v. Shumaker, 914 So.2d 1156, 1167-68 (La.Ct.App.2005) (holding the chemical smell known to be associated with the illegal manufacture of methamphetamine and the dangers of the manufacture of methamphetamine established an immediate need for the officers to enter the residence without a warrant to protect the public); United States v. Lloyd, 396 F.3d 948, 954 (8th Cir.2005); United States v. Walsh, 299 F.3d 729, 734 (8th Cir.2002) (“[Potential hazards of *299 methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an on-going methamphetamine manufacturing operation.”); United States v. Wilson, 865 F.2d 215, 217 (9th Cir.1989); United States v. Echegoyen, 799 F.2d 1271, 1278-79 (9th Cir.1986); United States v. Brock, 667 F.2d 1311, 1318 (9th Cir.1982); and People v. Messina, 165 Cal.App.3d 937, 212 Cal.Rptr. 75 (1985). At least one state has codified the exigent circumstance created by the process of manufacturing methamphetamine. Ohio Revised Code .Section 2933.33 provides:
“If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.”
In Williams, supra, the Court of Criminal Appeals held that the observation of an operating methamphetamine laboratory by law-enforcement officers constituted an exigent circumstance justifying a warrantless search. The Court' of Criminal Appeals stated:
“The State contends that the methamphetamine lab itself created an exigent circumstance that enabled law-enforcement officials to conduct a warrantless search of Williams’s mobile home. The appellate courts of Alabama have not previously addressed the narrow issue whether the threat posed by an operating methamphetamine lab constitutes an exigent circumstance allowing a war-rantless search of a residence law-enforcement officials suspect contains a methamphetamine lab.
“Jurisdictions that have tackled the issue have held that the dangers posed by an operating methamphetamine lab are sufficient to constitute an exigent circumstance for purposes of conducting a warrantless search of a residence. For example, in United States v. Layne, 324 F.3d 464, 468-69 (6th Cir.2003), the United States Court of Appeals for the Sixth Circuit noted that the production of methamphetamine ‘ “poses serious dangers to both human life and to the environment ... [and] these chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals, when mixed improperly, can cause explosions and fires.” ’ Id., quoting H.R. Rep. 106-878, pt. 1 at *22 (September 21, 2000).
“The Maine Supreme Court also has held that discovery of an operating methamphetamine lab can provide an exigent circumstance that would allow a warrantless search. State v. Bilynsky, 932 A.2d 1169 (Me.2007). In its opinion, the Maine court included a catalog of those jurisdictions that have held that discovery of an operating methamphetamine lab constitutes an exigent circumstance, beginning with United States v. Williams, 431 F.3d 1115 (8th Cir.2005), in which the United States Court of Appeals for the Eighth Circuit held that the discovery of an operating methamphetamine lab in the defendant’s home rendered a protective sweep of the home necessary to protect the safety of the officers and local residents.
“The Bilynsky court then cited other cases consistent with Williams, stating that
*300 “ ‘the Eighth Circuit noted that “[t]he potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by-police officers who had probable cause to believe they had uncovered an ongoing methamphetamine manufacturing operation.” United States v. Walsh, 299 F.3d 729, 734 (8th Cir.2002). The court cited five cases [in Walsh ] from the Ninth and Tenth Circuits to support that proposition. Id. Courts outside the Eighth, Ninth, and Tenth Circuits have reached the same result. See, e.g., United States v. Denson, No. 1:05-CR-088 ... (E.D.Tenn. Feb. 2, 2006) [(not reported in F.Supp.)]; People v. Duncan, 42 Cal.3d 91, 227 Cal.Rptr. 654, 720 P.2d 2, 10-11 (1986); Holder v. State, 847 N.E.2d 930, 939-40 (Ind.2006); State v. Castile, No. M2004-02572-CCA-R3-CD ... (Tenn.Crim.App. June 28, 2006)[(not reported in S.W.3d)].’
“State v. Bilynsky, 932 A.2d 1169, 1175-76 (Me.2007).
“The Iowa Supreme Court has found that ‘[t]he volatile nature of the dangers created, by methamphetamine labs can be exigent circumstances justifying an immediate limited search of premises harboring such a lab.’ State v. Simmons, 714 N.W.2d 264, 273 (Iowa 2006); see also Kleinholz v. United States, 339 F.3d 674, 677 (8th Cir.2003) (explaining that the volatile nature of methamphetamine labs presents exigent circumstances justifying an immediate limited search when officers smelled odor associated with the production of methamphetamine); and State v. Chapman, 107 Or.App. 325, 332-33, 813 P.2d 557, 560-61 (1991) (concluding that a working methamphetamine lab provided exigent circumstances for warrantless search).
“Based on the inherent dangers of an operating methamphetamine lab, we now hold that [the observation] of such a lab by law-enforcement officials constitutes an exigent circumstance justifying a warrantless search.”
995 So.2d at 920-21.
In Williams, the law-enforcement officers were investigating a tip from a confidential informant that a methamphetamine laboratory was being operated at a certain location. When the officers arrived at the location, they smelled an odor known to them, based on their training and experience, to be consistent with the process of manufacturing methamphetamine coming from a shed and a mobile home on the premises. Additionally, one of the officers observed the operating methamphetamine laboratory in the shed. The Court of Criminal Appeals held that the totality of the circumstances established that an exigent circumstance existed making the law-enforcement officers’ warrantless entry into and search of the mobile home proper. Williams establishes that the observation of a methamphetamine laboratory in the process of making methamphetamine, as evidenced by the law-enforcement officer’s testimony that he saw the laboratory in operation, creates an exigent circumstance.
In this case, the question presented is whether the process of manufacturing methamphetamine, evidenced by the odor known by law-enforcement officers to be generated during the manufacturing process, establishes a sufficient risk of danger to the public, creating an exigent circumstance justifying an immediate entry into and search of a residence by law-enforcement officers.
In United States v. Clarke, 564 F.3d 949 (8th Cir.2009), the United States Court of Appeals for the Eighth' Circuit confronted this same issue. In Clarke, law-enforcement officers had received an anonymous *301 tip that methamphetamine was being produced at Clarke’s residence. When the officers arrived at the residence, they smelled a chemical odor around the house that they knew, based on their training and experience, to be associated with the manufacture of methamphetamine. When no one responded to their knocks on the door, the officers entered the residence to ensure the safety of any occupants. After determining that the officers had probable cause, the Eighth Circuit Court of Appeals held that exigent circumstances existed, stating:
“Because the officers had probable cause to believe methamphetamine was being produced in Clarke’s home, the officers reasonably concluded there was a potential threat to the safety of the officers, anybody inside the home, and anyone in the surrounding area. See United States v. Walsh, 299 F.3d 729, 734 (8th Cir.2002) (declaring, ‘[o]ur court has consistently considered safety factors in determining whether exigent circumstances existed,’ and ‘[t]he potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an on-going methamphetamine manufacturing operation’).”
564 F.3d at 959
In United States v. Rhiger, 315 F.3d 1283, 1288 (10th Cir.2003), the United States Court of Appeals for the Tenth Circuit noted that it had, in an earlier decision, determined that the
“ ‘basic aspects of the “exigent circumstances” exception [with regard to the manufacturing of methamphetamine] are that (1) law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize the evidence, and (3) there must be some reasonable basis, approaching probable cause to associate an emergency with the area or place to be searched.’ ”
(Quoting United States v. Wicks, 995 F.2d 964, 970 (10th Cir.1993).) See also People v. Doll, 21 N.Y.3d 665, 998 N.E.2d 384, 975 N.Y.S.2d 721 (2013).
The record in this case establishes that an exigent circumstance existed requiring immediate action by the law-enforcement officers to protect themselves, the occupants of the apartment, and the public. Here, when the law-enforcement officers arrived at the apartment complex in response to a dispatch informing them that it had been reported that methamphetamine was being manufactured iii Bailey and Clayton’s apartment, they smelled an odor they recognized, based on their training and experience, to be consistent with the process of manufacturing methamphetamine. The officers testified that when Bailey opened the apartment door the odor grew stronger. The record establishes that the inhalation of the odor of the chemicals used in the manufacturing of methamphetamine has adverse health effects, that the process of manufacturing methamphetamine creates a high risk of explosion, and that the officers believed that they, the occupants of the apartment, and the public were in immediate danger. The immediacy of the situation is evidenced not only by the officers’ expeditious protective sweep of the apartment, but by the presence of the firefighters at the apartment complex and the evacuation of the other residents of the complex. Additionally, the record establishes that the purpose of the officers’ entry into and search of the apartment was to remove any occupants from the potential harm manufacturing *302 methamphetamine can cause and to secure the apartment for the firefighters to investigate the source of the odor, not to search for evidence. Here, exigent circumstances existed, requiring immediate action, because the law-enforcement officers reasonably believed that methamphetamine was being manufactured in Clayton and Bailey’s apartment and because the process of manufacturing methamphetamine constitutes an emergency, life-threatening situation that requires immediate action to protect the law-enforcement officers and the public.
Here, the law-enforcement officers were justified in entering and searching the apartment because the officers, acting on probable cause and in good faith, reasonably believed from the totality of the circumstances that the nature of the manufacture of methamphetamine posed a risk of danger to them and the public. See Moore v. State, 650 So.2d 958, 962-63 (Ala.Crim.App.1994) (“Whether exigent circumstances exist depends upon whether an ‘emergency situation’ exists. An emergency situation exists ‘when the officers in good faith believe that they or someone within are in peril of bodily harm.... ’ ”).
This Court does not find persuasive Clayton and Bailey’s argument that the behavior of the officers indicated that there was no need for immediate action. A fair reading of the record establishes that, in light of the odor the law-enforcement officers recognized to be consistent with the process of manufacturing methamphetamine, the law-enforcement officers were concerned about their safety and the safety of the occupants of the apartment and the public. The fact that Sgt. Hall remained in the apartment to allow Clayton to dress her two-year-old child before escorting them outside into the cold temperature does not extinguish the urgency of the situation or the concern for public safety; rather, it exhibits Sgt. Hall’s desire not to cause additional risk to the child’s health. Additionally, the record clearly demonstrates that the officers remained inside the apartment just long enough to remove its occupants and then left as quickly as possible. Cf. United States v. Echegoyen, supra (rejecting defendant’s argument that the behavior of the officers before, during, and after the search indicated that the alleged exigent circumstance was pretextual and holding that the evidence supported the conclusion that there was a potentially dangerous fire hazard based on testimony regarding the chemical smell and the risk of fire posed by the illegal manufacturing of narcotics).
Moreover, to hold, as Bailey and Clayton urge, that the law-enforcement officers had to secure a warrant before entering the residence would have placed the safety of all in the vicinity of the odor in danger. This Court finds it immaterial in our determination whether an exigent circumstance existed that the methamphetamine laboratory found in the apartment was inactive. The pivotal consideration is that the record establishes that at the time the law-enforcement officers entered the apartment they had a good-faith belief, based on the odor known to them to be consistent with the process of manufacturing methamphetamine, that methamphetamine was being manufactured in the apartment and that the process of manufacturing methamphetamine posed a danger to the occupants of the apartment, the officers, and the public.

Conclusion

Because the law-enforcement officers had probable cause to believe that methamphetamine was being manufactured inside the apartment and because the process of manufacturing methamphetamine, in light of its explosive nature, creates an exigent circumstance, the law-enforcement *303 officers’ warrantless entry into and search of Bailey and Clayton’s apartment on January 7, 2011, was proper. Therefore, the judgment of the Court of Criminal Appeals holding otherwise is reversed, and this case is remanded to that court for proceedings consistent with this opinion.
1130012 — REVERSED AND REMANDED.
1130013 — REVERSED AND REMANDED.
BOLIN, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., concurs in the result.

. A Montgomery grand jury issued an indictment charging Clayton with two counts of first-degree unlawful manufacturing of methamphetamine, a violation of § 13A-12-218, Ala.Code 1975, and one count of unlawful possession of drug paraphernalia, a violation of§ 13A-12-260(C), Ala.Code 1975.

. A Montgomery grand jury issued an indictment charging Bailey with two counts of first-degree unlawful manufacturing of methamphetamine, a violation of § 13A-12-218, Ala. Code 1975; one count of unlawful possession of marijuana for personal use, a violation of § 13A-12-214, Ala.Code 1975; and one count of unlawful possession of drug paraphernalia, a violation of § 13A-12-260(C), Ala.Code 1975.

. The Court of Criminal Appeals reversed the trial court’s order as to a later search of the apartment and remanded the case.

. A third codefendant, Natasha Rae Lee, was an appellee in the Court of Criminal Appeals (case no. CR-11-1865), which issued one opinion addressing all three codefendants. She petitioned this Court for certiorari review *292 of the Court of Criminal Appeals’ decision. This Court denied her petition on November 15, 2013 (case no. 1130032).

. It appears that the dispatcher had received a call from a citizen who identified himself and indicated that a methamphetamine laboratory was operating in the apartment.

. The apartment complex had eight apartments.

. A police officer is not required to have a warrant to approach a residence and knock because that is "no more than any private citizen might do.” Kentucky v. King, 563 U.S. -,-, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011).